**Dana N. THROGMORTON, Appellee,**

v.

**UNITED STATES FORGECRAFT CORPORATION, Appellant.**

No. 91–1574.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1991.

Decided June 1, 1992.

George A. Wooten, Fort Smith, Ark., argued (J. Randall McGinnis, on brief), for appellant.

W. Asa Hutchinson, Fort Smith, Ark., argued, for appellee.

McMILLIAN, Circuit Judge.

United States Forgecraft Corp. (Forgecraft) appeals from a final judgment entered in the United States District Court[1] for the Western District of Arkansas, after a bench trial, in favor of Dana N. Throgmorton awarding her $27,635.84 in dam-

ages on her Title VII sex discrimination claim under 42 U.S.C. § 2000e–2. Throgmorton was also awarded $9,568.05 in attorney's fees and costs.[2] For reversal, Forgecraft argues that the district court erred in finding that (1) Throgmorton had established a prima facie case of discrimination and (2) Forgecraft had not articulated a legitimate, nondiscriminatory reason for Throgmorton's termination. For the reasons discussed below, we affirm the judgment of the district court.

BACKGROUND FACTS

Throgmorton, a woman, was hired by Forgecraft on June 21, 1987, as a Quality Control Clerk. In January 1988 she was promoted to the position of "Materials Control System (MCS) Coordinator." The MCS was a computer system which provided Forgecraft with information concerning its production from raw materials to the finished product.

Throgmorton remained in this position until she was terminated on April 27, 1989. According to Forgecraft, her termination occurred because the MCS was being discontinued for business reasons and therefore her job was eliminated. Forgecraft was also reducing its work week from five days to four days and terminated other employees, including one other woman. The district court found that the MCS was abandoned for legitimate business reasons and that fifteen of Throgmorton's twenty job responsibilities were eliminated as a result of the discontinued use of MCS. The other five duties were transferred to another Forgecraft employee, Larry Woodham.

Throgmorton contends that she was terminated because of the general gender bias shown by Forgecraft management. Throgmorton alleged, and the district court found, that had she been a man, she would have been transferred to another position at Forgecraft. Throgmorton testified that Chief Operating Officer Glen Cate had told her that women did not belong in manage-

**1.** The Honorable Morris S. Arnold, United States District Court for the Western District of Arkansas.

**2.** *Throgmorton v. United States Forgecraft Corp.,* Civil No. 90–2038 (W.D.Ark. Mar. 8, 1991).

ment and often used profanity in front of her. The owner of Forgecraft, David Monnich, said of Throgmorton in his deposition read at trial:

> [H]ere she was a little old girl, a country girl, up there that didn't know anything from come sic 'em and she—and here he wanted her to help him implement a very complex system. And so all she could do is follow one, two, three, four and, you know, what can you do with a girl who is nothing but a clerk and all she did was run copies....

Later in describing Throgmorton's MCS job, Monnich commented in his deposition, "I guess a man could have done that job, but it's more suited to a woman, the job that she was doing." When asked to explain what he meant, Monnich continued, "Well, shuffling paper and punching a keyboard is—most women have better dexterity than men and, you know, you see more women clerks than you do men clerks. That's our history in business, isn't it?"

Delanor Lee Cannon, a consultant to Forgecraft on the MCS system, described the treatment of women at Forgecraft: "Women in that company were second class citizens, I don't know, treated like cattle, different than any company I've ever been in." Cannon testified that, "they [women] appeared to understand that they were subservient to the men. No women could ever make a decision." Cannon also testified that Cate only used profanity in the presence of Throgmorton and not with the other employees.

Based on this testimony, the district court found that Throgmorton's termi-

nation was discriminatory. The district court acknowledged that many of Throgmorton's job responsibilities were eliminated by the discontinuation of the MCS, but found, based upon the "general attitude of the outfit," that Forgecraft "would have found something for Ms. Throgmorton to do at her salary had she been a man."

## DISCUSSION

■ This disparate treatment case should be analyzed under the *McDonnell Douglas* [3]–*Burdine* [4] framework [5] which requires three stages of analysis: (1) prima facie case, (2) legitimate, nondiscriminatory reasons, and (3) pretext. [6] *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (*Burdine*); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973) (*McDonnell Douglas*).

■ First, Throgmorton has the burden of proving a prima facie case. *See Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94. Forgecraft admits that Throgmorton is a member of a protected class, was qualified for her job and was in fact discharged. Forgecraft alleges that no one was hired to fill her position following her discharge, and therefore, there is no causal connection between her membership in a protected class and her discharge. Throgmorton argues that because of her gender she was denied other opportunities in the company, such as the inventory control position which was subsequently filled by a man, Larry Woodham. As evidence of this

---

3. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (*McDonnell Douglas*).

4. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

5. This case is not properly analyzed as a mixed motive case under *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Forgecraft's defense was not that it had both discriminatory and nondiscriminatory reasons for terminating Throgmorton. Forgecraft claimed that Throgmorton was discharged because the MCS was discontinued and no discrimination was involved.

6. We recognize this court's policy of only reviewing findings of discrimination for the sufficiency of evidence and not engaging in the three step *McDonnell Douglas–Burdine* analysis. *See Williams v. Valentec Kisco, Inc.*, 964 F.2d 723 (8th Cir.1992); *Morgan v. Arkansas Gazette*, 897 F.2d 945 (8th Cir.1990); *Barber v. American Airlines*, 791 F.2d 658 (8th Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986). In this case the district court made limited oral findings on the record and therefore it was necessary for us to use the *McDonnell Douglas–Burdine* framework to reconstruct the district court's analysis.

Throgmorton points to the comments about women made by both Cate and Monnich, who were responsible for hiring decisions at Forgecraft.

We agree with the district court that Throgmorton proved a prima facie case of discrimination. The issue here is whether Throgmorton would have been offered another position at Forgecraft had she been a man, not whether someone else was hired to fill her exact position. In arguing that someone must have been hired to fill Throgmorton's position is a necessary element of the prima facie case, Forgecraft uses the four-part test set forth in *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.[7] The Supreme Court, however, has explained that "this standard is not inflexible, as '[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect in differing factual situations.'" *Burdine*, 450 U.S. at 253–54 n. 6, 101 S.Ct. at 1093–94 n. 6, *quoting McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. In the present case, it is not necessary for Throgmorton to prove that someone took her specific job. Instead, proof that, had she been a man, Forgecraft would have offered Throgmorton another position in the company completes the requirements for a prima facie case. We hold that the district court did not err in finding a prima facie case based on the discriminatory comments by senior management who were responsible for personnel decisions.

■ Once Throgmorton established her prima facie case, the burden of production then shifted to Forgecraft "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *see Burdine*, 450 U.S. at 254–55, 101 S.Ct.

at 1093. To meet this burden, Forgecraft must set forth the reasons for Throgmorton's termination and these reasons must raise "a genuine issue of fact" as to whether Forgecraft discriminated against Throgmorton. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094.

Forgecraft argues that its legitimate, nondiscriminatory reason was the discontinuation of the MCS, and therefore, the elimination of most of Throgmorton's job responsibilities. Forgecraft states that this reason meets its burden of proving a legitimate, nondiscriminatory reason for Throgmorton's termination. Forgecraft anticipated Throgmorton's argument of pretext with statistical evidence showing that it has other women employees.

Throgmorton argues that Forgecraft misinterprets the district court's ruling. Throgmorton asserts that the district court found that the decision to terminate her, rather than reassigning her to another position, was motivated by gender bias.

We agree that Forgecraft misinterprets the district court's ruling. The prima facie case "creates a presumption that the employer unlawfully discriminated against the employee." *Id.* at 254, 101 S.Ct. at 1094. Throgmorton, in her prima facie case, created a presumption that had she been a man she would have been reassigned, rather than terminated. To overcome this presumption, Forgecraft must provide a legitimate, nondiscriminatory reason why it did not reassign Throgmorton, but instead terminated her. There is no dispute that the MCS was eliminated for business reasons, but even given that fact, Forgecraft must articulate a legitimate, nondiscriminatory reason for its refusal to reassign her to a different position despite the elimination of most of her job responsibilities. The discontinuation of the MCS explained why Throgmorton's old job was eliminated, not

---

7. The four-part test used in *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824 (footnote omitted), is as follows:

The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he [or she] belongs to a racial minori-

ty; (ii) that he [or she] applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his [or her] qualifications, he [or she] was rejected; and (iv) that, after his [or her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

why Forgecraft failed to reassign her to a different job. No legitimate, nondiscriminatory reason for Forgecraft's failure to reassign Throgmorton was found by the district court. Therefore, the issue of pretext, the third stage of the *McDonnell Douglas–Burdine* analysis, does not even arise. We agree with the district court that no legitimate, nondiscriminatory reason was shown by Forgecraft.

Accordingly, we affirm the judgment of the district court.