42 F.3d 1386
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ora Sterling KING, Ph.D., Plaintiff-Appellant,
v.
COPPIN STATE COLLEGE; Calvin W. Burnett, Ph.D.,
individually and in his capacity as President,
Coppin State College, Defendants-Appellees,
and
Donald LANGENBERG, Ph.D., in his official capacity as
Chancellor, University of Maryland Systems, Defendant.
 No. 94-1523.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 3, 1994.
Decided Dec. 23, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-92-2453-S)
 D.Md.
 AFFIRMED.
 Elizabeth Lani Newman, KALIJARVI & CHUZI, P.C., Washington, D.C., for Appellant.
 Susan Somerville-Hawes, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Baltimore, MD, for Appellees.
 Stephen L. Spitz, KALIJARVI & CHUZI, P.C., Washington, D.C., for Appellant.
 J. Joseph Curran, Jr., Attorney General of Maryland, OFFICE OF THE ATTORNEY GENERAL, Baltimore, MD, for Appellees.
 Before LUTTIG and WILLIAMS, Circuit Judges, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant, Dr. Ora Sterling King, is a black, female, tenured professor employed since 1981 by appellee, Coppin State College (Coppin), a constituent institution of the University of Maryland. Dr. King became Dean of Education in 1988 and interim Dean of Graduate Studies in 1990. In June, 1991, after being requested to resign as Dean of Education and Graduate Studies, Dr. King returned to a faculty position at a salary of $55,000; $10,000 less than she had received as Dean.
 
 
 2
 In her action filed on August 31, 1992, Dr. King alleged that Coppin and Dr. Burnett, President of Coppin, discriminated against her on the basis of her race and sex when they asked her to resign her deanship. Dr. King also contended that Coppin and Dr. Burnett failed to pay her equal pay for equal work and discriminated against her on the basis of race when they reduced her salary by $10,000.
 
 
 3
 Finally, Dr. King alleged that when she complained to the Equal Employment Opportunity Commission (EEOC) of discrimination, Coppin and Dr. Burnett retaliated against her by denying her request for a sabbatical and by refusing to submit her grant proposal for consideration. Dr. Burnett and Coppin moved for summary judgment which the district court granted on March 8, 1994. Dr. King appealed. We affirm.
 
 I.
 
 4
 In order to show the district court erred in granting defendants' motion for summary judgment, Dr. King must produce evidence that there is a material fact at issue necessitating trial of this case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Dr. King first points to the National Council for Accreditation of Teacher Education (NCATE) report issued to Coppin during her term as Dean. This report denied accreditation to Coppin at the graduate level and accredited the undergraduate program contingent on the correction of six different problem areas within a specified time. Dr. King submitted that the NCATE report was favorable and faults the district court for not finding that a genuine issue of material fact existed since Coppin stated the report was unfavorable. However, it is undisputed that the undergraduate level received accreditation only upon stipulations for corrections. Since Dr. King was responsible for preparing Coppin for reaccreditation, the stipulations in the NCATE report were available for Dr. Burnett to use as support for his decision to request Dr. King's resignation. It is immaterial whether the report was considered favorable or unfavorable to Coppin.
 
 
 5
 Dr. King also contends the faculty complaints received by Dr. Burnett were not legitimate. Dr. Burnett received a letter with the names of thirteen faculty members which itemized a series of disagreements the faculty members had with Dr. King's communication skills, management style, and administrative decisions. The district court found that even accepting as true Dr. King's assertion that the faculty complaints were unfounded, Dr. King's inability to command the confidence and respect of her subordinate employees and to maintain professional relationships is undisputed. While Dr. King disagreed with the assessment of her performance and the actions taken by Coppin, her disagreement does not raise issues of material fact necessitating trial in this case.
 
 
 6
 We find the district court properly viewed the evidence and drew all reasonable inferences in favor of Dr. King when it determined that no genuine issues of material fact existed and that Dr. King did not show that Coppin's articulated reasons for requesting her resignation were merely pretexts for illegal discrimination. Specifically, the court heard evidence and found that black females had served in leadership positions as Deans at Coppin since the early 1970s. Most significantly, after Dr. King left her position as dean, the interim dean position was offered to two black females who declined, before it was finally accepted by a black male.
 
 II.
 
 7
 Dr. King contends Coppin discriminated against her on the basis of her race and gender by reducing her salary when she left her position as Dean and returned to the faculty. She offers as support the fact that Coppin did not reduce the salary of a similarly situated white male employee, Dr. Valletutti, when he returned to a faculty position. In order to succeed on this claim, Dr. King must do more than merely point to a single salary disparity. Bazemore v. Friday, 751 F.2d 662, 670 (4th Cir.1981), aff'd in part and vacated in part, 478 U.S. 385 (1986). She must provide evidence comparing her qualifications with those of the higher paid employee, as well as comparing the qualifications demanded by the specific jobs. Id.
 
 
 8
 Dr. King produced only one faculty salary (Dr. Valletutti's) in order to substantiate her claim that male faculty members are paid at a higher rate of salary. Further, Dr. King ignored evidence that Dr. Valletutti, a recognized international scholar and author, taught at Coppin for over twenty-five years, compared to Dr. King's ten-year term.
 
 
 9
 The district court heard evidence and found that Dr. King earned a salary equal to or greater than white male deans of other divisions during the same period. Dr. King did not submit any evidence comparing the relative skill, effort, responsibility, and working conditions involved in her position with those of Dr. Valletutti. The district court was, therefore, correct in its determination that Dr. King did not provide evidence to make a prima facie case of raceor gender-based discrimination.
 
 III.
 
 10
 Dr. King alleges that after she filed EEOC charges, Coppin retaliated against her by refusing to submit a grant proposal she offered and by refusing to approve her requests for sabbatical leave. The district court found that Dr. King did not meet her burden of establishing a causal connection between the filing of her EEOC claim and the alleged adverse actions. Dr. King's subjective belief that the denials were retaliatory was an insufficient basis to create a fair doubt that but for the filing of the EEOC charge, Dr. King would have received sabbatical leave and had her grant proposals submitted. Further, even if Dr. King established a prima facie retaliation case, defendants articulated legitimate, nondiscriminatory reasons for the adverse action.
 
 IV.
 
 11
 Dr. Burnett's deposition was taken by Dr. King in January, 1993. At the deposition, Dr. Burnett refused to respond to a question concerning alleged extra-marital relationships with female faculty members at Coppin. Upon Dr. King's motion to compel Dr. Burnett's deposition testimony, the Court found that Dr. King had shown insufficient relevance to justify pursuing this line. Dr. King's motion for reconsideration was also denied. Dr. King then motioned for leave to file a second amended complaint which was denied on the basis that she sought to reopen a discovery avenue that was properly closed to her in an attempt to humiliate the defendant, Dr. Burnett.
 
 
 12
 A court of appeals will not overturn discovery rulings absent a showing of clear abuse of discretion. Ardey v. United Parcel Service, 798 F.2d 679, 682 (4th Cir.1986) (citing Rabb v. Amatex Corp. 769 F.2d 996, 999 (4th Cir.1985)). Coppin argues that the district court did not abuse its discretion in denying Dr. King's motion to compel because the questions asked by counsel at Dr. Burnett's deposition were unrelated to any legal theory advanced by Dr. King in her pleadings. Dr. King did not advance any allegations in her amended complaint to suggest that she was subjected to a hostile work environ ment resulting from the special treatment Dr. Burnett allegedly gave to faculty members with whom he had engaged in sexual relationships. We find the district court did not clearly abuse its discretion in denying Dr. King's motion to compel. Dr. King then sought to amend her complaint. While leave to amend should be granted freely, Dr. King's efforts to amend sought to add new allegations and a new legal theory that Dr. Burnett had created and participated in a hostile work environment by relying on advice of faculty members with whom he engaged in extra-marital sexual relationships. Although Dr. King knew about the rumors for twelve years, she waited until a very late stage in the lawsuit to introduce the allegations. No abuse of discretion may be attributed to the district court for denying the discovery request or leave to amend the complaint. Having reviewed the record, we affirm on the reasoning of the district court.
 
 AFFIRMED