885 F.Supp. 1254 (1995)
Salena GARNER, Plaintiff,
v.
ARVIN INDUSTRIES, INC., Defendant.
No. 1:93CV19SNL.
United States District Court, E.D. Missouri, Southeastern Division.
April 20, 1995.
*1255 *1256 David C. Howard, St. Louis, MO, for plaintiff.
Kenneth J. Yerkes, John R. Maley, Barnes and Thornburg, Indianapolis, IN, for defendant.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff has filed this age discrimination action alleging that she was terminated from her position, as part of a reduction-in-force (RIF), on the basis of her age. She alleges that her employment termination was in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. This matter is before the Court on the defendant's motion for summary judgment (# 17), filed September 21, 1994. Responsive pleadings have been filed, as well as numerous other pleadings, in connection with the instant motion.[1] This case was recently reset for trial to the Court's trial docket of November 13, 1995.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson *1257 Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.
Plaintiff had been employed by the defendant beginning in 1975. Early in her employment, she had been an union-employee working as a dispatcher. Approximately, the last ten years of her employment had been as a non-union employee working in the maintenance area of the Engineering Department as a clerk.
Defendant Arvin Industries is comprised of several divisions, including the Arvin North American Automotive Division. The Arvin North American Automotive Division has a production facility in Dexter, Missouri. Plaintiff was employed, during the relevant time-period, at this production facility in Dexter, Missouri.
The Dexter plant produces automobile exhaust systems: mufflers, tailpipes, manifolds, and catalytic converters. These products are original automobile equipment sold directly to the automobile manufacturers for installation in new cars. During the relevant time-period approximately 65% of the defendant's products were sold to General Motors, the remaining 35% sold to Ford and Toyota. During the relevant time-period, defendant employed approximately 750 persons at its Dexter facility. Defendant's Exhibits A and B  Affidavits of Richard Hendricks and Greg Edwards.
In 1991 defendant instituted a division-wide RIF necessitated by negative economic conditions in the automobile industry. In August 1991, Phil Davis (Dexter plant manager) attended an division-wide meeting of defendant's automotive plant managers at defendant's headquarters in Indiana. He, along with the other plant managers, were told that a division-wide RIF was to be implemented immediately for cost reasons. Defendant's Exhibit D  Deposition of Phil Davis. Davis was instructed to reduce twenty (20) non-union salaried positions at the Dexter facility. Although he was not given specific instructions or criteria regarding the selections for the RIF, he was told that the elimination of these positions would be permanent. Davis Deposition. The plant managers were given nine (9) days to prepare a list of eliminated positions to be submitted to defendant's headquarter's personnel.
Upon returning to Dexter, Davis held a staff meeting with his six (6) department heads to announce the RIF. Attending this meeting, along with others, was Robert Willis, the Dexter plant engineering manager. Davis instructed his staff that because the people selected for the RIF would not be replaced "they need[ed] to select people who would affect the operation of the plant the least." Davis Deposition, pg. 43. Since he had only been at the plant approximately eighteen (18) months, Davis gave full responsibility to his department heads to make the selections because "[t]hey knew the people better ... they had to run their department, and they have to know who they need to have to do the job, and so they selected the people." Davis Deposition, pg. 48.
At the time of the RIF, plaintiff's department head was Robert Willis. Two people reported directly to Willis: Tom Holt, the maintenance general foreman; and Phil LeBeau, the chief project engineer. Plaintiff reported directly to Holt, the other two clerks (Nora Hardin and Resa Foushee) reported directly to LeBeau. Including Holt and LeBeau, a total of seventeen people were under Willis' supervision. At the time of the RIF, Willis was age 50, Holt was age 46, and Plaintiff was age 58. Only two other employees under Willis' supervision were over age 50.
At the time of the RIF, plaintiff's primary duties consisted of entering work orders into the defendant's computer system, reading air-compressor meters, general office filing, running errands into Dexter, maintaining a "return goods" list and issuing notices of same, printing out open work orders, and answering the telephone. Plaintiff's Exhibit 1  Plaintiff's Deposition; Holt Deposition; and Willis' Deposition. She performed all of these tasks satisfactorily.
The Dexter RIF resulted in the elimination of nineteen (19) non-union salaried positions. Of these 19 positions, five (5) persons *1258 were placed in "bargaining unit positions".[2] Thus, a total of fourteen (14) positions were permanently eliminated. Plaintiff's position was selected as one of the 19 positions eliminated by the RIF. She was one of the three (3) oldest employees[3] in Willis' department. All three of these employees lost their jobs in the RIF.
Of the fourteen (14) terminated employees, eight (8) were under the age of forty (40); while six (6) were over the age of forty (40). Of the six over the age of 40, three (3) were over the age of 50.
Holt submitted plaintiff's name to Willis for consideration. Willis gave final approval for plaintiff's employment termination. Plaintiff was given personal notice of her selection for termination by Holt and Willis. She was offered the opportunity to return to a "bargaining unit position" but she declined the offer.
Final approval of the plaintiff's termination, as well as of the other thirteen (13) employees at the Dexter facility, was made after Richard Hendricks, defendant's divisional Vice-President for Human Resources, evaluated the Dexter facility's proposed RIF list for impact upon employees over the age of forty (40). He determined that the average age of salaried and non-exempt employees at the Dexter facility would actually increase slightly, i.e. increase average age to age 40, after the proposed RIF. Hendrick's Affidavit.
Plaintiff contends that out of the fourteen (14) persons selected for permanent employment termination, three (3), including herself, were over the age of fifty (50). She further contends that her job duties were assumed by a younger employee, Resa Foushee. Defendant contends that plaintiff's statistical pool is too small to support her contention of discrimination, that in fact more employees under the age of 40 were let go than those over the age of 40, and that plaintiff's job responsibilities were distributed among several of defendant's employees.
An age discrimination case may proceed to trial in one of two ways: one way involves the use of direct evidence of age discrimination; the other way utilizes indirect methods of proof of age discrimination. Williams v. Valentec Kisco, Inc., 964 F.2d 723 (8th Cir.1992); Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir.1991); Blake v. J.C. Penney, 894 F.2d 274, 278 (8th Cir.1990). When a plaintiff produces direct evidence, such as statements by decisionmakers clearly showing that age was a motivating factor in the employment decision; or at least significant circumstantial evidence showing a specific link between the discriminatory animus and the challenged employment decision, the burden-shifting standards established by Price-Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), come into play. Stacks v. Southwestern Bell Yellow Pages, 996 F.2d 200, 201 n. 1 (8th Cir. 1993); Beshears, at 1353. In the absence of such evidence, the guidelines set forth in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) are applicable. Johnson v. Minnesota Historical Society, 931 F.2d 1239, 1242-43 (8th Cir. 1991); Halsell v. Kimberly-Clark, 683 F.2d 285, 289 (8th Cir.1982), citing, Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981), cert. den., 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983).
Plaintiff contends that she had direct evidence of age discrimination by virtue of a statement allegedly made by Tom Holt approximately one week prior to her termination. Plaintiff testified at her deposition that it was not unusual for Holt to sit at plaintiff's desk putting codes on work orders. Plaintiff's Deposition, pgs. 194-95. Plaintiff would wait until he finished, at which point Holt would get up and plaintiff would sit down. Plaintiff's Deposition, pg. 195. However, on the morning in question, plaintiff avers that Holt was sitting at her desk and that when he saw her standing, "he jumped up out of his seat and said, `Here sit down', and I said to go ahead and finish. He said `I'm not too old to stand.'" Plaintiff's Deposition, pg. 195.
*1259 At the time of this alleged statement[4], Holt was forty-six (46) and the plaintiff was fifty-eight (58). Plaintiff testified that, during her approximate ten (10) years of working under Holt's direct supervision, Holt never made any comments regarding her age or age in general, other than the alleged statement made the week prior to her termination. Plaintiff's Deposition, pgs. 193-98. She further admits that, prior to her inclusion in the RIF, she did not believe that defendant or anyone on defendant's behalf ever discriminated against her on the basis of age. Plaintiff's Deposition, pg. 193.
Assuming that the statement was made, the Court finds no evidence to support plaintiff's contention that the remark was discriminatory and reflected an age-bias on the part of Holt. No reasonable juror could conclude, as plaintiff does, that this comment implied that Garner was too old to stand; rather it makes light of Holt's ability to stand. The comment is simply too vague to create a reasonable inference of age discrimination. Frieze v. Boatmen's Bank of Belton, 950 F.2d 538, 542 (8th Cir.1991). Plaintiff's own testimony establishes that this was an isolated comment by Holt; that neither Holt nor anyone else at the Dexter facility had ever before done or said anything which she could describe as reflecting an age-bias. Furthermore, by the plaintiff's own account the comment was uttered sometime after the decision had been made to include her in the RIF. Viewing the evidence in a light most favorable to the plaintiff, this Court must conclude that Holt's comment was nothing more than an isolated stray remark too vague to demonstrate a discriminatory attitude. Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1324 (8th Cir. 1994); Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir.1993); Frieze, supra.; Beshears v. Asbill, 930 F.2d. 1348, 1354 (8th Cir.1991). From all accounts, Holt's comment was simply "an innocent well-meaning" remark. See, Bashara v. Black Hills Corp., 26 F.3d 820, 824 (8th Cir.1994).
Since plaintiff has no direct evidence or evidence that directly reflects the use of age as the motivating criteria in the challenged decision, she must first establish a prima facie case in order to proceed to trial. Stacks, at 202. Under the ADEA, a prima facie case requires the plaintiff to show that she was a member of the protected class (between the ages of 40 and 65); that she was subjected to an adverse employment action; that she was qualified for a particular position or job, or was performing adequately in his job; and that she was replaced by a person not a member of the protected class. Gaworski v. ITT Commercial Finance Corp., 17 F.3d 1104, 1109 (8th Cir.1994); LaPointe v. United Autoworkers Local 600, 782 F.Supp. 347, 349 (E.D.Mich.1992), reversed and remanded on other grounds, 8 F.3d 376 (6th Cir.1993); Kehoe v. Anheuser-Busch Co., 995 F.2d 117, 119 (8th Cir.1993); Crady v. Liberty National Bank and Trust Co., 993 F.2d. 132, 134 (7th Cir.1993); Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, 174 (8th Cir.1992).
The Eighth Circuit Court of Appeals has recently modified the last requirement that the plaintiff be replaced by someone outside the protected class, especially in reduction-of-force cases. The plaintiff must either show that the employer assigned a non-member of the protected class to do the same work or make "some additional showing" that age played a "determining" role in the discharge. Kehoe, at 119, citing Holley v. Sanyo Manufacturing, Inc., 771 F.2d 1161, 1165-66 (8th Cir.1985); Glover v. McDonnell Douglas, 981 F.2d. 388, 393 (8th Cir.1992); Hall v. American Bakeries Co., 873 F.2d 1133, 1135 (8th Cir.1989). If the plaintiff fails "to establish a factual dispute on each element of the prima facie case, summary judgment is appropriate." Weber v. American Express, 994 F.2d 513, 515-16 (8th Cir.1993).
Arvin Industries does not dispute that plaintiff was a member of the protected class, that she was performing her job adequately, or that she lost her job as a result of *1260 the RIF. The issue is whether she has established her prima facie case by making "some additional showing" from which a reasonable factfinder could infer that age played a decisive role in her termination. Garner contends that her "additional showing" is established in three ways: Holt's statement to her, the reassignment of her duties to Resa Foushee (age 28), and the elimination of the three oldest employees (including herself) in her department.
As to Holt's statement, the Court determines that Holt's statement not only fails to represent direct evidence of discrimination, but also fails to constitute circumstantial evidence of discriminatory intent. See, Bashara v. Black Hills Corp., at 825.
Garner next argues that her duties were not eliminated but rather simply reassigned to Resa Foushee, an engineering clerk.[5] Prior to the RIF, Foushee has been one of two engineering clerks responsible for the tool order and purchase process. She did typing, filing, reading blueprints, requesting and providing quotes, order follow-up, data entry, and preparing scrap orders. Most of her work was done on a computer software system different from Garner's computer system.
Garner alleges that her duties were reassigned to Resa Foushee although Ms. Foushee had been at Arvin fewer years, did not have computer skills prior to her employment at Arvin, and had poor typing skills as evidenced by a typing test taken in January 1989. She further contends that there is no evidence that Ms. Foushee could learn the plaintiff's computer software system faster than plaintiff could have learned Ms. Foushee's computer software system.
After reviewing the evidence on the record in a light most favorable to the plaintiff, the Court finds that plaintiff has failed to produce evidence which would convince a reasonable factfinder that plaintiff's job duties were given to a younger less experienced employee.
Although plaintiff claims that Foushee "got her job" she has provided no factual evidence whatsoever to dispute Holt and Willis' deposition testimony that after the RIF plaintiff's duties were distributed among several persons: 1) Foushee took over processing maintenance work orders; 2) tool crib attendants Mike Pyle and Jim Farmer ran errands into town to pick up and deliver parts; 3) third-shift supervisor Mike Karmas read the meters; 4) answering the phone in the maintenance office was left to the discretion of whoever was present; 5) the supervisors did the filing of the blueprints, while general filing was left to Foushee and Hardin; and 6) xeroxing was done by everyone in the department according to individualized needs; and 7) other miscellaneous clerical duties were performed by both Hardin and Foushee. Holt Deposition, pgs. 40-51; Willis Deposition, pgs. 52-56. Plaintiff has offered no evidence that Ms. Foushee was an unsatisfactory employee, or "less qualified" than plaintiff at the time of the RIF with respect to handling the processing of the maintenance work orders. Although she did not have computer skills prior to her employment (in 1988), plaintiff has offered no evidence to dispute the testimony that Foushee had acquired the necessary computer skills by 1991. Finally, it is hardly relevant that Foushee may have not been a speed-typist in 1989 since the RIF did not take place until two and one-half years later.
As for whether it was easier to train Foushee on plaintiff's computer software system or vice-versa is immaterial to the issue of Foushee "taking over" plaintiff's job. The undisputed fact is that both women would require training on the other's computer software system.
The material facts remain undisputed that plaintiff's job consisted of a variety of duties that were all reassigned to several individuals, including individuals over the age of forty (40). It is further undisputed that no new clerical employees were hired in the maintenance department after the RIF. Plaintiff has failed to provide evidence that an issue of *1261 material fact exists regarding the reassignment of plaintiff's job duties.
Finally, plaintiff contends that the fact that the three oldest employees in her department, including herself, were terminated constitutes an "additional showing" that age was the determining factor in her dismissal. She has provided the statistical analysis of her expert, James Evans, to show that the dismissal of three persons over the age of fifty-five (55), out of the fourteen (14) terminated, is evidence of age discrimination.
No doubt statistical evidence has some probative value on the issue of discrimination, in this case, age discrimination. "However, the statistical evidence must be of a kind and degree sufficient to raise the inference that the employment decision was based upon an impermissible factor such as age." Goetz v. Farm Credit Services, 927 F.2d. 398, 405 (8th Cir.1991) citing Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). "Statistical disparities must be sufficiently substantial that they raise such an inference." Goetz, at 405-6, citing Chaffin v. Rheem Mfg., 904 F.2d 1269, 1276 (8th Cir. 1990). Defendant contends that plaintiff's proffered statistical evidence is not the "kind and degree" which is sufficient to raise an inference of age discrimination because the sample pool utilized was limited to four employees over the age of 55 out of a total of eighty-six (86) employees at the Dexter plant, with the actual analysis being done by comparing the three over-55 terminated employees with the total fourteen (14) employees terminated in the RIF. Defendant contends that such "sub-group" analysis is misleading because the protected class is persons over the age of 40, not persons over the age of 55.
After reviewing the evidence in a light most favorable to the plaintiff, the Court determines that there are several significant problems with Mr. Evans' analysis. Firstly, the Court agrees that the sample pool is simply too small to provide any real meaningful data indicating that age was a determining factor in plaintiff's termination. The ADEA provides protection for a class of people between the ages of 40 and 65. Her expert concedes that he only was given information to analyze regarding the termination of four employees over the age of 55. He had no information at his disposal as to how many of the defendant's employees who were subject to the RIF were over the age of 40 or how many were under the age of 40. Deposition of James Evans, pgs. 65-66. He admits that if the aggregate of forty and over had been the target group, then "there is no discrimination statistically." Evans Deposition, pg. 80. He further concedes that statistically, if comparing those terminated under the age of 40 with those terminated over the age of 40, there is no significant difference.
Q. (by Mr. Maley for the defendant): And what this shows is the fact that the under forties bore a higher level of termination as part of this reduction in force?
A. (by Mr. Evans): As a statistician I would call those two termination rates equivalent, that is, I'm sure they would not be statistically significant, so I would say that if you consider forty and over to be the target group, then the termination rates for that group and the younger group are statistically equivalent.
Q. And that would also mean that at forty and over level, that the hypothesis of no age discrimination would be confirmed?
A. Well, we would not be able to reject it.
Q. So at the forty and over level versus the under forty, as a statistician you can not offer any evidence suggestive of age discrimination, correct?
A. Right, using that target group I can not offer any evidence.
Evans Deposition, pgs. 80-81. Defendant has offered the expert testimony of two full-time statisticians who opined that Mr. Evans' methods are fatally flawed by using a too small sample pool and a 5% significance test, instead of a 1% significance test. They even point out that Mr. Evans' methodology contradicts his own textbook. Defendant's Exhibit 7. Several courts have rejected statistical evidence, such as that offered by the plaintiff, as unreliable and too insignificant to create a reasonable inference of age discrimination. LeBlanc v. Great American Ins. Co., 6 F.3d. 836, 848 (1st Cir.1993); Campbell v. *1262 Fasco Industries, Inc., 861 F.Supp. 1385, 1394-95 (N.D.Ill.1994); Leidig v. Honeywell, Inc., 850 F.Supp. 796, 803 n. 7 (finding plaintiff's comparison of employees over the age of 50 to employees under the age of 50 in support of an ADEA disparate impact claim "troublesome" because the ADEA confers protected status on anyone age 40 or older); see also, Adams v. West Publishing Co., 25 F.3d. 635, 636 (8th Cir.1994) aff'g 812 F.Supp. 925 (D.Minn.1993) (rejecting over-55 plaintiff's statistical evidence that out of 23 people transferred, 9 were between the ages of 55 and 65 as not statistical evidence "of degree and kind" under Goetz suggesting age discrimination).
This Court also concurs that plaintiff's statistical evidence is not "of the degree and kind" mandated by Goetz in order to raise a reasonable inference of age discrimination. Secondly, when considering plaintiff's statistical evidence with the undisputed fact that after the RIF the average age of defendant's employees increased to approximately 40, this Court concludes that plaintiff has failed to demonstrate that an issue of material fact exists, namely that defendant intentionally discriminated against age-protected employees by subjecting her to the RIF. See, Kypke v. Burlington Northern, 928 F.2d 285, 287-88 (8th Cir.1991); Holley, at 1167.
The Court determines that plaintiff has not established her prima facie case of age discrimination because she has failed to produce evidence demonstrating an "additional showing" sufficient to convince a reasonable jury that age was the determining factor in her selection for termination in the RIF.
Even if plaintiff's evidence was sufficient to constitute an "additional showing" of age discrimination, Arvin has articulated nondiscriminatory reasons for the discharge and plaintiff has failed to show sufficient evidence that these articulated reasons were pretextual and that Arvin wrongfully selected her for RIF termination due to her age. St. Mary's Honor Center v. Hicks, ___ U.S. ___, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); LeBlanc, at 843. To avoid summary judgment, Garner must establish an issue of material fact regarding whether these reasons are credible and that age was the determining factor for the challenged employment decision. Johnson v. Group Health Plan, 994 F.2d. 543, 547 (8th Cir.1993).
Plaintiff does not dispute that defendant instituted a division-wide reduction in force affecting the plant facility in Dexter. Defendant contends that although specific instructions or criteria were not set forth by upper-management for selecting the personnel subject to the RIF, it was understood that the people terminated would not be replaced. RIF plans may generally include objective criteria by which to determine the positions to be eliminated; however, the absence of such objective criteria should not be considered probative evidence of discriminatory animus. Bashara, at 825, citing Hillebrand v. M-Tron Industries, Inc., 827 F.2d 363, 367 (8th Cir.1987).
Defendant contends that since the nonunion salaried positions would be permanently eliminated, it considered an employee's versatility, performance, and overall ability when making the selections. Hendricks' Affidavit. As regards the plaintiff in particular, Holt and Willis testified that they were looking at areas in their departments which could either be eliminated or combined and still function. They determined that Garner's position could be eliminated and the departments still function adequately. Holt Deposition, pgs. 27, 52; Willis Deposition, pgs. 49, 59. Furthermore, Arvin was decentralizing purchasing from its Indiana headquarters to each of its seven manufacturing plants. The workload involving the purchase order system was anticipated to increase. Willis determined that it was easier to train Foushee as to the menu-driven maintenance work order computer system than to train plaintiff as to the purchase order 8100 computer system. Willis Deposition, pgs. 59, 118. Finally, Willis and Holt also considered the fact that Garner had been in the union previously, still had seniority, and was eligible to return to the union. Holt Deposition, pgs. 53-54, 67; Willis Deposition, pgs. 59-60.
Although plaintiff does not explicitly argue that Arvins' reasons for selecting her for termination are pretextual, she argues that she, not Foushee, should had been retained *1263 because she had seniority and could have been taught the computer skills necessary for the purchase order computer system. Garner further argues that even if she was eligible to return to a union position, she could not do so because of circulation problems with her legs. She claims that Holt and Willis knew of her medical problems which precluded her from returning to a union position. Even considering the plaintiff's argument in a light most favorable to her, she fails to provide any factual support for her contentions, in fact, her own deposition testimony contradicts her allegation.
It is undisputed that neither Foushee or Garner's personnel records were reviewed prior to the termination decision. Plaintiff does not offer any evidence that Foushee was an unsatisfactory employee or that plaintiff's job performance evaluations were far superior than that of Foushee's. Both women had computer skills necessary to perform their work. Anticipating that the computer workload would increase in the engineering department, especially with regard to tool purchasing, and faced with the decision of whether to retain an employee already familiar with the tool purchase order process and computer system or one without such familiarity, Willis and Holt determined that it was a better business decision to retain the employee already familiar and skilled on the purchase order computer system. See, Goetz, at 401. Willis not only believed that it was more prudent to retain Foushee in the engineering department since the workload was going to increase but that Foushee was more adept at learning new computer skills than Garner. Willis Deposition, pgs. 59, 118. Although this was a subjective opinion on Willis' part, it is no more a subjective opinion than plaintiff's belief that she could have easily been taught Foushee's computer skills. However, Willis' opinion regarding who was more adept at learning new computer skills is not probative evidence on the issue of age discrimination. Plaintiff has not set forth any affirmative evidence that the retention of Foushee over plaintiff was not a reasonable business decision devoid of age considerations.
As to her contention that Holt and Willis knew of her varicose veins problem prior to her termination, such a contention is completely meritless in light of her own deposition testimony. Both Holt and Willis testified that, at the time of making the decision to eliminate plaintiff's position, they believed that plaintiff had seniority rights and could return to a bargaining unit position, as did several other employees who had their non-union salaried positions eliminated. They both testified that they were unaware that plaintiff had any medical problems which would have prevented her from returning to a union position. Holt Deposition, pgs. 54-56, 67; Willis Deposition, pgs. 59-61, 117-118, 121. Holt testified that plaintiff did a "great deal of walking" in her job, had good attendance (her job performance evaluations rated her above average in attendance), and that the first time he heard about her leg problems was when he and Willis informed her of the termination decision. Holt Deposition, pgs. 54-56; 67. Willis testified that prior to telling plaintiff of the termination decision, he had no knowledge of her varicose veins problems, that she had never had an attendance problem, that she had never submitted any medical records or evidence of a problem, and that no one had ever brought to his attention plaintiff's medical problems. Willis Deposition, pgs. 60-61, 117-118.
Plaintiff's own deposition testimony supports the testimony of Holt and Willis. At her deposition, plaintiff testified that sometime during 1977-78, while she in a union floor position, she had a conversation with Jerry Nichols (a union supervisor) about a transfer to a dispatcher job. She testified that she told him that she wanted the transfer because "one of her legs was hurting real bad." Deposition of Selena Garner, pg. 60. She admits that she only told Nichols that it was hurting her to stand, that she did not identify any specific medical condition, and that she did not submit any medical documents pertaining to leg problems.
Q. (by Mr. Yerkes, defendant's counsel): Ms. Garner, going back to your conversation with Jerry Nichols at the time that you requested the change, what did you specifically tell him about the problems that you were having with your legs?

*1264 A. I told him it was hurting me to stand on them.
Q. More specifically than that, did you identify a condition?
A. No, I did not.
Q. You did not, you just simply said it was hurting you to stand?
A. (Witness nods head).
Q. Did you submit any medical documentation that supported the problems that you were having?
A. No.
Garner Deposition, pgs. 63-64. Although plaintiff has seen several doctors, she admits that none of them have placed restrictions on her work duties due to her varicose vein condition. Garner Deposition, pg. 190. She further admits that she has never presented defendant with any medical restrictions. Garner Deposition, pg. 191. She admits that she did not know if Holt knew of her varicose vein problem.
Q.  His sitting, okay. Was he [Holt] aware of the problems that you had with your legs?
A. I don't know whether he was or not. I didn't go around broadcasting it.
Q. You don't know whether he was or wasn't?
A. No.
Garner Deposition, pg. 195. Finally, she admits that she never told Holt or Willis of her varicose veins problem, and that her personnel file did not have anything in it indicating a medical problem with her legs.
Q. Now, you testified earlier you weren't sure whether Mr. Holt knew about your condition, Mr. Willis I don't believe you testified earlier, you told him about your condition, it was the other supervisor, the foreman?
A. Jerry Nichols.
Q. Jerry Nichols, you said you had mentioned it to him, but you never mentioned it to Mr. Willis; it that correct?
A. That is true. Not the day of the termination.
Q. Until the 24th. So as we sit here or as you were there on the 24th when you made the statement to Mr. Holt and Mr. Willis, you had no reason to believe that they knew about your leg condition?
A. I would have thought they had reported it whenever I told Mr. Nichols about it the first time, that would have been in my files, but it wasn't, because I looked through.
Q. So there wasn't any note in the file?
A. No.
Q. And you never told either one of these persons?
A. No.
Garner Deposition, pgs. 206-07.
Plaintiff's own sworn testimony unequivocally contradicts her broad accusation that Holt and Willis knew of her varicose veins problem and that she could not return to a union position. No reasonable jury could find that an issue of material fact exists as to the good faith belief by Holt and Willis that plaintiff was eligible and could transfer to a union position. Furthermore, plaintiff's contention that she could not take a union position because of her leg problems is purely subjective on her part. She admits that she did not inquire what union jobs were available, she did not inquire as to any union jobs which would accommodate her medical problems, nor did inquire as to modifications or accommodations for existing union jobs so that she could continue her employment. Garner Deposition, pg. 217. Plaintiff was offered a transfer to a union position, the same offer made to five (5) other employees who lost their non-union salaried positions in the RIF, and she rejected it. She has put forth no evidence that a transfer to a union position would have resulted in loss of pay or benefits. She has put forth no evidence that no union jobs existed for which she was qualified, medical condition notwithstanding. She has failed to make any showing that the defendant's reasons for selecting her position for termination was pretextual and that age was the determining factor for her selection.
This Court is obliged not to second-guess the defendant's personnel decisions, unless such decisions are discriminatorily based. "There is no principle of law that requires that a business' decision be popular with employees. As long as the decision is *1265 not based on unlawful age discrimination, `the courts have no business telling [companies] ... how to make personnel decisions, which may be objectively or subjectively based.'" Walker v. AT & T Technologies, 995 F.2d 846, 850 (8th Cir.1993). Garner's evidence, which the Court has previously outlined above, makes no showing that defendant's articulated reasons for her selection in the RIF terminations were pretextual or that age actually motivated the defendant's decision. Hazen Paper Co. v. Biggeins, ___ U.S. ___, ___, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993); see also, St. Mary's Honor Center v. Hicks, ___ U.S. ___, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The Court concludes that plaintiff has failed to make a sufficient evidentiary showing entitling her to bring her case before a jury.
Having found that plaintiff's ADEA claim fails under the McDonnell-Douglas and Hicks standards, the Court also finds that plaintiff's state-law claim under the MHRA fails as well.
Since the Court determines that no material issues of fact exist regarding plaintiff's employment termination and that said termination was not wrongfully based upon the plaintiff's age, defendant is entitled to judgment as a matter of law.
NOTES
[1] On October 3, 1994 plaintiff filed a motion to strike portions of the defendant's brief and exhibits in support of defendant's summary judgment motion (# 21). On November 7, 1994 plaintiff filed a supplemental motion to strike portions of the defendant's brief and exhibits in support of defendant's summary judgment motion (# 28). Also, on November 7, 1994 plaintiff filed a motion to strike portions of defendant's reply brief and exhibits filed in support of defendant's summary judgment motion (# 29). Responsive pleadings have been filed regarding these motions. These motions have been ruled upon by the Court in companion orders.
[2] "Bargaining unit position" is an euphemism for a union job.
[3] These employees were all over the age of fifty (50) at the time of the RIF.
[4] Holt testified at his deposition that he had no recollection of making such a statement to plaintiff. Holt Deposition, pg. 58.
[5] Although both Nora Hardin and Resa Foushee were under the age of forty (40) at the time of the RIF, plaintiff's arguments (regarding the alleged reassignment of her duties to an employee under the protected age) are solely directed to the retainment of Ms. Foushee.