_____

No. 95-2926
_____

Salena G. Garner,                    *
                                     *
          Plaintiff-Appellant,       *     Appeal from the United States
                                     *     District Court for the
     v.                              *     Eastern District of Missouri.
                                     *
Arvin Industries Inc./Arvin          *
North American Automotive,           *
                                     *
          Defendant-Appellee.        *


_____

                Submitted:  January 11, 1996

                Filed:  February 26, 1996
_____

Before LOKEN, REAVLEY,[*] and HANSEN, Circuit Judges.
_____


HANSEN, Circuit Judge.


     Salena Garner brought this action against Arvin
Industries/Arvin North American Automotive (Arvin), alleging that
she had been terminated in connection with a reduction in force
(RIF) on the basis of her age, in violation of the Age
Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and
the Missouri Human Rights Act (MHRA), Mo. Ann. Stat. § 213 (Vernon
1996).  Arvin moved for summary judgment, contending that Garner
had failed to set forth sufficient facts to establish either a
prima facie case or that Arvin's proffered reasons for the adverse

_____

[*]The HONORABLE THOMAS M. REAVLEY, United States Circuit
Judge
     for the Fifth Circuit, sitting by designation.

employment action were pretextual. The district court[1] granted Arvin summary judgment on both bases. <u>Garner v. Arvin Indus., Inc.</u>, 885 F. Supp. 1254 (E.D. Mo. 1995). We affirm.


I.


Arvin Industries Inc. consists of several divisions, including the Arvin North American Automotive division. The Arvin North American Automotive division has a production facility in Dexter, Missouri, which produces automobile exhaust systems to be installed in new cars.

Salena Garner began working for Arvin at the Dexter facility in 1975. Initially, she worked in bargaining unit positions (union jobs), first as a unit operator and subsequently as a clerk/dispatcher. In May of 1981, Garner began working in the engineering department as a maintenance clerk, which was classified as a non-union salaried position. Garner performed a variety of tasks in this position, including: recording work-order records, reading air compressor meters, general office filing, running errands, issuing return goods notices, making copies, running maintenance work orders, and answering the phone. Her primary duty consisted of reading and extracting pertinent data from maintenance work orders and entering the data into a computer. Garner worked in this position until her termination from Arvin.

In 1991, Arvin determined that conditions in the automobile industry necessitated a RIF. The Dexter plant manager, Phil Davis, was instructed to eliminate 20 non-union salaried employees to reduce costs. Davis was not provided with specific instructions or

---

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

criteria for selecting individuals to be included in the RIF but he was aware that the positions held by employees in the RIF were being permanently eliminated. Davis met with the Dexter plant's six department heads and informed them that a RIF was to be implemented, that the layoffs were permanent in nature, and accordingly, the department heads should select individuals whose departure would impact plant operations the least. Davis left to the department heads the responsibility of selecting employees for the RIF because the department heads were more familiar with the capabilities of the individual employees and the responsibilities required for each position. Garner's department head at the time of the RIF was Robert Willis; Tom Holt, the maintenance general foreman of the Dexter plant and Garner's immediate supervisor, reported directly to Willis.

Garner and 18 other non-union salaried employees were selected for the RIF. Of this group, 5 employees were able to acquire union positions in the Dexter plant, and the remaining 14, including Garner, were terminated. At the time of the RIF, Garner was 58 years of age. Garner's various clerical duties in the engineering department were absorbed by a number of remaining employees. Resa Foushee, a clerk in Garner's department who was 28 years of age at the time of the RIF, assumed Garner's responsibility for processing maintenance work orders.

Garner brought this action alleging that she was terminated because of her age. After extensive discovery, the district court granted summary judgment to Arvin and denied Garner's various motions to strike portions of Arvin's summary judgment briefs and exhibits. The district court later denied Garner's Federal Rule of Civil Procedure 59(e) motion to alter or amend the judgment. Garner appeals.

## II.

In reviewing a district court's grant of summary judgment, we apply the same standards as the district court. McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995). Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo. Seltzer-Bey v. Delo, 66 F.3d 961, 963 (8th Cir. 1995).

Garner relies on indirect evidence to support her age discrimination claim, and accordingly our analysis is governed by the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), three-step burden shifting method of proof.[2] Garner must first satisfy the elements of a prima facie case applicable in the RIF context. Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994). If she satisfies this standard, the burden of production shifts to Arvin "to articulate a legitimate, non-discriminatory reason for the adverse employment action," i.e., Garner's termination. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 776-77 (8th Cir. 1995). If Arvin proffers a legitimate reason, the burden shifts back to Garner to demonstrate that Arvin's proffered reason is merely a pretext for age discrimination. Id. at 777. Finally, Garner at

---

[2]Garner also claimed in the district court that she had direct evidence of age discrimination and that the "mixed motives" analysis under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), applied. She has abandoned that legal theory before this court. Additionally, although Garner filed her age discrimination claim under the MHRA along with the ADEA, the district court analyzed her claim only under the ADEA and that is the way the parties have presented the issues to this court; hence we too will analyze Garner's claims under the ADEA. In any event, we observe that the same analysis applies under both statutes. See Bradford v. Norfolk Southern Corp., 54 F.3d 1412, 1416 (8th Cir. 1995).

all times carries the burden of persuasion to show that the adverse employment action was motivated by intentional discrimination. Id. (citing St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2749 (1993)).

In this case, the district court granted summary judgment to Arvin on the basis that Garner failed to set forth sufficient facts to establish a prima facie case of age discrimination. Garner, 885 F. Supp. at 1262. In the alternative, the court held that Garner had not come forth with sufficient evidence to create a jury issue on whether Arvin's proffered reasons were pretextual. Id. at 1264. We will assume for the purposes of this appeal that Garner has established a prima facie case, because even granting her this assumption, the district court properly granted summary judgment to Arvin on the issue of pretext.[3]

Arvin submits that it terminated Garner pursuant to a RIF caused by an economic downturn in the automobile industry which necessitated the termination of 19 non-union salaried employees at the Dexter plant. The department heads were informed that the positions held by employees selected for the RIF were being permanently eliminated. Accordingly, the department heads were to select employees for the RIF whose departure would affect plant operations the least in the long run. Garner's superiors, Willis and Holt, stated that they selected individuals for the RIF whose positions could be eliminated or combined with others and still

---

[3]We decline to follow Arvin's suggestion that Garner failed to raise the issue of pretext in her resistance to Arvin's summary judgment motion, thereby waiving the issue, and address the merits of Garner's pretext arguments as outlined in her briefs. We recognize, however, that the district court observed that Garner did not "explicitly argue that Arvin['s] reasons for selecting her for termination are pretextual," Garner, 885 F. Supp. at 1262, and we likewise note that Garner's brief in opposition to Arvin's motion for summary judgment does not mention pretext or appear to otherwise argue the issue.

leave the department operational.  Other factors Willis and Holt considered were the employee's existing work skills and capacity to absorb new and additional responsibilities.

Willis and Holt determined that Garner's various clerical duties could be easily assumed by other employees.  Willis selected Garner for the RIF rather than Foushee, another engineering department clerk who was responsible for the tool order and purchase process, because he believed that the computer system Foushee operated for purchase orders was more complex than the menu-driven computer system Garner used to process maintenance work orders.  Thus, Willis thought that Foushee could learn Garner's computer responsibilities more quickly than vice-versa.  Along the same lines, around the time of the RIF, Arvin decided to decentralize its purchasing process from its Indiana headquarters to each of its seven manufacturing plants, and Willis and Holt believed that this development would dramatically increase the workload involving the purchase order process at the Dexter plant, which was a process that Foushee was familiar with while Garner was not.  Finally, in selecting Garner for the RIF, Willis and Holt placed some weight on the fact that Garner had accumulated seniority time in the union as a result of her earlier union jobs at the Dexter plant, which they believed would enable her to obtain a union job rather than be separated from employment; Foushee, however, had no union experience or seniority.

Because Arvin has articulated a legitimate, nondiscriminatory reason for Garner's termination, the burden shifts to Garner to demonstrate the existence of a fact issue as to whether these explanations are a pretext for age-based discrimination.  In an effort to meet this burden, Garner has submitted evidence which she claims creates a dispute as to whether Foushee, rather than she, should have been selected for the RIF.  This evidence consists of affidavits from Garner and one Nora Hardin, who in the past

purportedly worked with Foushee and who states that at the time of the RIF, Foushee possessed no computer skills. This in turn, according to Garner, casts considerable doubt on the validity of Arvin's proffered rationale that it would be easier to teach Foushee the computer skills required for Garner's clerk position than vice-versa.

However, this argument suffers from an elementary infirmity: the affidavits which purportedly serve to create the disputed fact issue were not in the record when the district court ruled on Arvin's summary judgment motion. After the district court rendered its summary judgment ruling in favor of Arvin, Garner filed a motion to alter or amend the judgment under Rule 59(e) and attached the two affidavits, which the district court denied. We have repeatedly stressed that "[a] Rule 59(e) motion cannot be used to raise arguments which could, and should, have been made before the trial court entered final judgment." Bannister v. Armontrout, 4 F.3d 1434, 1440 (8th Cir. 1993) (internal quotations omitted), cert. denied, 115 S. Ct. 418 (1994). Garner has advanced no reason why these affidavits were not submitted with her opposition to Arvin's motion for summary judgment, and we therefore decline to consider them. As the experienced district judge more fully outlined in his well-reasoned order, Garner, 885 F. Supp. at 1263, Garner has offered no other evidence which would create a material fact issue concerning whether Foushee, rather than she, should have been selected for the RIF.

Garner also argues that a fact dispute remains concerning the validity of Willis's and Holt's claims that, in selecting Garner for the RIF, they considered that she had union seniority and presumably could obtain a union position at the Dexter plant. Garner contends that when Holt and Willis informed her that she had been selected for the RIF, they mentioned to her the possibility of returning to a union job, and she in turn immediately informed them

-7-

that she could not work in such a position because she had varicose veins which prevented her from being on her feet the amount of time required for a union job.  Garner suggests that at that point the RIF process was still in the early stages and Willis and Holt could have made adjustments on who to include in the RIF based on this information.

However, the record is clear that at the time that Willis and Holt selected Garner for the RIF, they were not aware that she possessed any medical condition that precluded her from returning to a union job.  As the district court observed, any contention to the contrary is flatly contradicted by Garner's own deposition testimony.  Garner, 885 F. Supp. at 1263-65.  Garner's statement to Willis and Holt that she could not work in a union job after they informed her that she had been selected for the RIF does not alter the fact that when the decision was made to include her in the RIF, the decisionmakers were unaware of any purported medical condition. Finally, Garner's claim that the RIF was still in the early stages when she informed Willis and Holt of her medical condition is also undermined by her deposition testimony: she stated that she was informed that she was selected for the RIF at the end of her shift on September 24, 1991, and Arvin had been "laying people off" that whole day.  (Appellant's App. at 45.)

Accordingly, we agree with the district court that Garner has not presented sufficient evidence to create a genuine issue of material fact that Arvin's proffered reasons for terminating her were merely a pretext for age discrimination.[4]

_____

[4]Garner also made various motions in the district court to strike portions of Arvin's briefs and exhibits, which the district court denied.  Although Garner does not explicitly raise as separate legal points in her brief that the district court's denial of these motions was erroneous, she does devote a major portion of her brief to the argument that the court erred in failing to strike these items.  To the extent that Garner does

-8-

III.


For the reasons enumerated above, we affirm the judgment of the district court.


A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

appeal the district court's rulings on the motions to strike, after carefully reviewing the record, we conclude that the district court committed no error by denying the motions.