_____

No. 95-2387
_____

Rodolfo Roxas,                        *
                                      *
        Plaintiff-Appellant,          *
                                      *
    v.                                *
                                      *
Presentation College, a South         *
Dakota Corporation; Bernadetto        *
Bodin, individually; Tim              *
Bergstrom, individually; Joyce        *
Englert, individually; Joseph         *    Appeal from the United States
Vogel, individually; Rodney           *    District Court for the
Fouberg; Harold Higgins,              *    District of South Dakota.
individually; Cecilia Kitto,          *
individually; Patricia Larson,        *
individually; Craig McFarland,        *
individually; Joan Reichelt,          *
individually; Ancilla Russell,        *
individually; Katherine Scholtz,      *
individually; Susan King-Schutz,      *
individually,                         *
                                      *
        Defendants-Appellees.         *

_____

Submitted:  February 15, 1996

Filed:  July 23, 1996
_____

Before HANSEN, LAY, and JOHN R. GIBSON, Circuit Judges.
_____

HANSEN, Circuit Judge.

     Rodolfo Roxas brought this action against the defendants alleging discrimination on the basis of race, national origin, gender, and age, in violation of 42 U.S.C. § 1981, Title VII (42 U.S.C. § 2000e), and the Age Discrimination in Employment Act

(ADEA) (29 U.S.C. §§ 621-634), in the denial of his application for sabbatical leave. The district court[1] granted the defendants' motion for summary judgment because Roxas failed to produce any evidence to show that the defendants' proffered reasons for the denial were pretexts for unlawful discrimination. Roxas appeals and we affirm.

I.

Rodolfo Roxas, then a 54-year-old Asian Roman Catholic priest born in the Philippines, was employed at Presentation College (the College), located in Aberdeen, South Dakota. The College is a Roman Catholic institution sponsored by the Presentation Sisters of the Blessed Virgin Mary and governed by a Board of Trustees (the Board).

Father Roxas was hired by the College in 1977 and worked there 15 consecutive years until 1992, when he resigned. During his tenure at the College, Roxas performed several duties which were roughly apportioned as follows: 50 percent to teaching, 25 percent to counseling, and 25 percent to chaplaincy. During his employment at the College, the Board granted Roxas a one-year sabbatical leave during the 1984-85 academic year, during which he obtained a certificate by completing "A Catholic Chaplain Clinical Pastoral Internship" at St. Elizabeth's Hospital in Washington, D.C.

On September 23, 1991, Dr. Edward Stibili, who was the Academic Dean of the College, circulated a memorandum to all faculty members, informing them that requests for sabbatical leave for the 1992-93 academic year were required to be submitted to him no later than November 4, 1991. The College's personnel manual

---

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

provided certain guidelines concerning sabbatical applications, among them the proviso that a faculty member had to have worked for seven consecutive years to be eligible for sabbatical leave. The personnel manual also provided that a request for sabbatical should be accompanied by a short statement outlining the purpose of the sabbatical, the type of scholarly activity that would be undertaken, any sources of extra income during the sabbatical period, and any other information the applicant deemed pertinent. Finally, the personnel manual stated that the proposed sabbatical activity must meet "the needs of the College." (J.A. at 338.)

Roxas submitted what he termed a "Tentative Plan" for sabbatical leave on November 4, 1991. He set forth "three possibilities" of areas of interest to him: (1) a Ph.D. in Educational Psychology, (2) a Master/Ph.D. in Theology, (3) a Sabbatical Certificate. (Id. at 340.) He did not indicate which program he preferred to pursue, stating that such a determination depended upon the "kind of support" he received from the College and that a more definite and detailed plan would be submitted at a later date if his sabbatical request was granted. (Id. at 342.) Significantly, Roxas's application was almost identical in terms of language and content to his application for a sabbatical which was approved for the 1984-85 academic year.

Two other faculty members, both female Caucasians, also submitted requests for sabbatical leave in November of 1991. Connie Marheine, a 37-year-old nursing instructor who had been employed by the College for approximately three years, requested a two-year sabbatical in order to obtain her Ph.D. in nursing from the University of Kentucky. Marheine requested that the College maintain her life and health insurance and pay her a monthly stipend of $200 during her sabbatical and that the College forgive the cost of the sabbatical at a rate of 20 percent per year for each year she taught at the College after returning from the

sabbatical. The other sabbatical applicant was Sherry Tebben, a 45-year-old chemistry professor who had been employed at the College for 18 years. She requested a sabbatical leave at half of her salary in order to complete her doctoral program.[2]

At the time these sabbatical requests were made, the College was undergoing a major change. The College, which had in the past offered only two-year degrees in nursing, was seeking to upgrade its nursing program to award a four-year bachelor's degree and to achieve accreditation from the National Association of Nurses and the State Board of Nursing. One of the major requirements for accreditation was that members of the nursing faculty obtain Ph.D.s in nursing.

The Faculty Development Committee of the College (the Committee) initially reviewed the three sabbatical applications, listing them in order of priority, and issuing recommendations. The Committee recommended approving the applications submitted by Marheine and Tebben and denying Roxas's request. The Committee based its decision with respect to Roxas's application on the facts that his application was unfocused and that it placed the burden on the College to determine in what program he should enroll. Further, the Committee determined that out of the three proposals Roxas submitted, the only one that would be of any benefit to the College was the Master/Ph.D. in Theology proposal. Accordingly, the Committee recommended that Roxas research and re-examine the academic areas he wished to pursue and submit a more detailed and focused plan the following academic year.

That same day, Dr. Stibili reviewed the three sabbatical applications and sent a memorandum of his observations to the

---

[2]For some inexplicable reason, Tebben's sabbatical application is not included in the record, and we therefore are unable to further outline the specifics of her sabbatical application.

President of the College, Sister Bernadette Bodin.  Dr.  Stibili noted that Roxas had received a previous unpaid sabbatical and received "satisfactory, if uneven teaching evaluations from his students and supervisors," and that Roxas was qualified to make the sabbatical request. (Id. at 346-47.)

The sabbatical requests were then reviewed by the Administrative Council, which consisted of the President, the Academic Dean, the Chief Financial Officer, the Director of Resource Development, the Mission Effectiveness Coordinator, the Director of Admissions, and one faculty representative.  The Council recommended that Marheine's application be granted and that Roxas's and Tebben's applications be denied.

Sister Bodin then sent a letter to the Board of Trustees, summarizing the findings and recommendations of the Faculty Development Committee and Dean Stibili, and also containing her own views.  Sister Bodin recommended denying Roxas's and Tebben's applications because they did not further the needs of the College, and approving Marheine's application because her proposal directly advanced a specific and immediate academic need of the College.

These recommendations and the three applications for sabbatical were considered by the Board in an executive session on January 12, 1992.  The Board specifically observed that the Committee had reviewed the applications, listed them in order of priority, and provided recommendations on them.  The Board, after specifically considering the needs of the College, approved Marheine's application for a sabbatical and denied Roxas's and Tebben's applications.

Upon being notified that the Board had denied his sabbatical request, Roxas applied for a faculty/chaplain position with Teikyo Marycrest University in Davenport, Iowa (where he is currently

-5-

employed). He later filed a charge of discrimination against the defendants with the South Dakota Division of Human Rights, contending that the defendants discriminated against him on the basis of race, national origin, gender, and age when they denied his sabbatical application. The South Dakota agency forwarded Roxas's complaint to the EEOC because South Dakota does not have a statute covering age discrimination. On September 27, 1993, the EEOC determined that the evidence did not support Roxas's charge and informed him of his right to sue.

Roxas then commenced the instant action, making the same claims he raised with the EEOC and also alleging that he was constructively discharged. The defendants moved for summary judgment, contending that Roxas failed to generate a genuine material factual question on the issue of pretext. The district court granted the defendants' motion, and Roxas appeals.

II.

A.

We review the district court's grant of summary judgment de novo, applying the same standards which that court did. Garner v. Arvin Indus., Inc., 77 F.3d 255, 257 (8th Cir. 1996). Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A party seeking to avoid having summary judgment entered against it must set forth specific facts showing that there is a genuine material issue that requires a trial. Marts v. Xerox, Inc., 77 F.3d 1109, 1112 (8th Cir. 1996).

B.

Roxas alleges that the denial of his sabbatical application constitutes discrimination on the basis of age in violation of the ADEA, on the basis of race in violation of 42 U.S.C. § 1981, and on the basis of race, national origin, and gender in violation of Title VII. He relies on the indirect method of proof outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to prove each of these claims. Although the McDonnell Douglas method of analysis arose in the context of Title VII, we have applied its burden-shifting framework to cases arising under the ADEA and § 1981. Garner, 77 F.3d at 257 (ADEA); Shannon v. Ford Motor Co., 72 F.2d 678, 682-83 (8th Cir. 1996) (Title VII and § 1981); Richmond v. Board of Regents of Univ. of Minn., 957 F.2d 595, 598 (8th Cir. 1992) (ADEA and § 1981). Additionally, we observe that while Roxas's claim is somewhat different than what we normally encounter in employment discrimination cases, we have observed that the McDonnell Douglas elements are flexible enough to encompass a wide variety of circumstances arising in the employment arena, see Throgmorton v. U.S. Forgecraft Corp., 965 F.2d 643, 646 (8th Cir. 1992), and courts have applied the ADEA and Title VII to cases involving issues concerning sabbatical leave. See Laffey v. St. Paul Technical Vocational Ins., No. 92-3231, 1993 WL 152716 (8th Cir. May 13, 1993) (unpublished) (addressing claim for sabbatical leave under Title VII), cert. denied, 114 S. Ct. 715 (1994); King v. Coppin State College, No. 94-1523, 1994 WL 712563 at *2 (4th Cir. Dec. 23, 1994) (unpublished) (denial of sabbatical analyzed for retaliatory discharge under Title VII). Accordingly, we analyze each of Roxas's discrimination claims under the McDonnell Douglas inferential framework, tailoring its elements to the alleged discriminatory conduct before us, a denial of sabbatical leave.

Father Roxas must first establish a prima facie case of discrimination. See O'Connor v. Consolidated Coin Caterers Corp., 116 S. Ct. 1307, 1309-10 (1996) (outlining elements of prima facie case for claim of race discrimination under Title VII and age discrimination under ADEA); Ruby v. Springfield R-12 Public School Dist., 76 F.3d 909, 911 (8th Cir. 1996) (elements for racial discrimination under § 1981 and Title VII); Krenik v. County of Le Sueur, 47 F.3d 953, 957-58 (8th Cir. 1995) (elements for sex discrimination under Title VII and age discrimination under ADEA); MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1059-60 (8th Cir. 1988) (indicating elements for claims of national origin discrimination under Title VII and § 1981 analyzed same as claims for race discrimination under same statutes). If Roxas establishes a prima facie case, the burden of production shifts to the defendants to show that the denial of Roxas's sabbatical application was for a legitimate, nondiscriminatory reason. Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 251 (8th Cir. 1995). If the defendants proffer such a reason, the burden of production shifts back to Roxas to establish that the proffered reason is actually a mere pretext for discriminatory animus. Garner, 77 F.3d at 257. "Finally, [Roxas] at all times carries the burden of persuasion to show that the [denial of his application for a sabbatical] was motivated by intentional discrimination." Id.

In the present case, we agree with the district court that Roxas has satisfied the elements of a prima facie case on his various discrimination claims. Thus, the burden of production shifts to the defendants to proffer a legitimate, nondiscriminatory reason for denying Roxas sabbatical leave.

The defendants submit that the Board, as the final decisionmaker on the sabbatical applications, adopted the determinations and recommendations made by the Committee. The

Committee concluded that Roxas's sabbatical application was vague and unfocused, that it placed the burden on the College to determine which program Roxas should pursue, and that a decision could not be made based on the information Roxas had provided. Further, and more importantly, the defendants note that the College was seeking to upgrade its nursing program to a four-year bachelor's degree program and was seeking commensurate accreditation with the National Association of Nurses and the State Board of Nursing. In order to achieve this goal, the College needed to have its nursing faculty upgrade their academic credentials by obtaining Ph.D.s in the field. None of the options Roxas set forth in his application assisted the College in achieving this end, while Connie Marheine's application for sabbatical specifically and immediately furthered this interest. For that matter, only one of Roxas's proposals would have been of any benefit to the College at all -- the Master/Ph.D. degree in Theology.

Each of the reasons advanced by the College is legitimate and nondiscriminatory. The burden, therefore, shifts back to Roxas to produce sufficient evidence to demonstrate the existence of a factual issue that these proffered reasons are a pretext for invidious discrimination. This burden will not be met by simply showing that the reason advanced by the employer was false; rather, Roxas must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995).[3]

_____

[3]Roxas's demonstration of discriminatory animus may come from evidence offered during the presentation of his prima facie case. See Rothmeier v. Investment Advisers, Inc., 85 F.2d 1328, 1336-37 (8th Cir. 1996) ("Consequently, the rule in this Circuit is that an age-discrimination plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision. The second part of this test sometimes may be satisfied without additional evidence where the overall strength of the prima facie case and the evidence of pretext `suffice[s] to show intentional discrimination.' The focus, however, always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of

The evidence Roxas submits to carry his burden falls far short of the mark. First, Roxas claims that certain statistics illustrate that female Caucasians in their "early forties or younger" are given preferential treatment over other minority applicants. (Roxas Br. at 6.) However, Roxas goes no further with this contention, developing no argument and citing no language from case law in support of this claim. Although we have held that statistics can be useful in determining whether a proffered reason is pretextual, in order to do so such statistics must "analyze the treatment of comparable employees." Hutson, 63 F.3d at 777. After carefully reviewing the record citations supplied by Roxas, we conclude that his statistical evidence does not meet this standard.

Second, Roxas claims that the language he used in his 1991 sabbatical application was identical, or nearly identical, to that contained in his application for sabbatical during the 1984-85 academic year, thereby undermining the defendants' claim that his application was unfocused. However, the defendants contend, and Roxas does not claim otherwise, that the circumstances at the College had changed markedly in 1991 from 1984; specifically, the College was seeking accreditation of its four-year nursing program and pursuant thereto had begun placing an emphasis on having nursing department faculty members obtain Ph.D.s. Thus, the marked difference in circumstances between the two years makes any discrepancy in the treatment of Roxas's second application unremarkable, and certainly not evidence of discrimination.

---

fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's age.") (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993)).

Third, Roxas makes much of the fact that Marheine had not been on the faculty of the College long enough to qualify for a sabbatical under the guidelines delineated in the College's personnel manual. The guidelines for sabbatical then in place provided that an applicant must "have worked for seven consecutive years prior to application" to be eligible for sabbatical leave. (J.A. at 338.) The personnel manual also indicated that "[a] sabbatical leave shall normally be for a term of one year at one-half salary . . . ." (Id.) Marheine's approved request included a stipend of $200 per month for 24 months of leave with a provision that the debt so incurred be paid back at the rate of 20 percent per year for each year taught at the College after the leave. Sister Bodine characterized Marheine's proposal as "minimum money up front which will be paid back either in service or in money" and as an "unpaid leave of absence." (Id. at 348.) That the defendants overlooked the seven-year employment requirement in order to grant Marheine sabbatical leave readily demonstrates, according to Roxas, the College's practice of specifically favoring Caucasian females. However, as Roxas himself admits, these guidelines are simply that -- guidelines -- and Roxas offers no proof that they were ever deemed conclusively binding when the College considered an application for a sabbatical. In fact, the record demonstrates that "the needs of the College" was the foremost concern when sabbatical applications were considered. (J.A. at 338, 349.) Thus, given the needs of the College, which have been outlined in detail above, the Board was presumably willing to overlook Marheine's relatively short length of employment in order to satisfy the College's immediate need for a

nursing faculty with Ph.D.s, at minimum expense to the College.[4]

Finally, Roxas claims certain statements allegedly made by Dean Stibili and the President, Sister Bodin, illustrate the College's bias against him because of his age and cultural heritage. The decisionmaking power regarding the sabbatical applications rested entirely with the Board, of which neither the President nor the Dean was a member. Roxas has offered no evidence linking these alleged statements to his sabbatical application or to the Board's decision to deny his application and thus, the purported statements are not evidence of pretext. See Hutson, 63 F.3d at 779 (holding that statements made by individuals who were not final decisionmakers with respect to decision to terminate do not establish pretext because no evidence of causal nexus). Neither has he shown that the Dean or the President made any misrepresentations concerning him to the Board. Additionally, there is no evidence that the President or Dean of the College made any discriminatory comments about Roxas to members of the Board in an effort to influence the Board concerning Roxas's qualifications for a sabbatical, or that the Board formed its judgment based on such statements. See Ryther v. KARE 11, 84 F.3d 1074, 1085 (8th Cir. 1996).

Roxas thus has failed to present any evidence which would create a genuine issue of material fact that the College's proffered reasons for denying his application for sabbatical were

_____

[4]In a related vein, Roxas points out that two Caucasian female faculty members were granted sabbatical leave, one before Roxas's 1991 application and the other after, and these individuals were not connected with the College's nursing program. However, neither of these individuals applied for sabbatical leave the same year that Roxas did, and accordingly they are inapposite to our analysis.

a pretext for unlawful discrimination.[5]  Accordingly, the district court's grant of summary judgment to the defendants was proper.[6]

IV.

For the reasons enumerated above, we affirm the judgment of the district court.


A true copy.

Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

_____

[5]In the district court, Roxas raised an issue claiming that the College harassed him following the denial of his application for sabbatical, which culminated with his being constructively discharged.  It is unclear from Roxas's brief whether he is raising that issue on appeal.  In any event, that issue is not properly before us because Roxas failed to allege a claim of constructive  discharge in his EEOC complaint, and the constructive discharge claim is not "like or reasonably related to" the claim of denial of sabbatical that was raised in the EEOC complaint.  See Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222-23 (8th Cir. 1994) (claim not included in EEOC complaint not cognizable in federal court unless claim meets standard quoted above).

[6]At the request of this court, the parties submitted supplemental briefing on the issue of whether resolution of the employment issues in this case would constitute excessive entanglement under the First Amendment.  However, the defendants failed to convince us that our consideration of Roxas's claims would risk excessive entanglement, and accordingly we proceeded to address the merits of Roxas's discrimination claims.  See Drevlow v. Lutheran Church, Missouri Synod, 991 F.2d 468, 472 (8th Cir. 1993) ("The Synod has not offered any religious explanation for its actions which might entangle the court in a religious controversy in violation of the First Amendment."). See also Gargano v. Diocese of Rockville Center, 80 F.3d 87, 90 (2d Cir. 1996).

-13-