Londo F. BRITT; Elmo P. Compton, Jr.; James F. Compton; Thomas W. Grogan; Joseph R. Hundley, Jr.; Woodrow W. Lancaster; Donald G. Marshall; Opal M. Ramsey; Pauline M. Ross; Pauline S. Smith; Claucey A. Vaughn; Louise M. Arnold, Plaintiffs,

and

Gilbert F. Barker, Jr.; Nancy Bousman; Edna H. Carter; Ellis J. Carter; Thomas B. Cline; George D. Gauldin; Callie G. Gray; Dorothy G. Howell; Lonnie E. Kapp; James L. Lawrence; Gerald I. Martin; James F. Martin; Wilma O. Moore; George R. Pack; Thomas O. Rakes; Christine J. Stone; Irvin W. Stone; Chester Y. Thomas; Evelyn R. Thomas; Dorothy F. Tolbert; Dewell M. Williams; Thomas D. Williams; Nellie M. Taylor, Appellants,

v.

E.I. DuPONT de NEMOURS & COMPANY, INC.; Martinsville Nylon Employees' Council Corp., Appellees.

No. 84-2237.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1985.

Decided July 25, 1985.

Anthony P. Giorno, Stuart, Va., for appellants.

Lewis T. Booker, Richmond, Va., John F. Lawless, New York City; Hunton & Williams, Richmond, Va., for E.I. DuPont de Nemours.

Fred D. Smith, Jr., Hartley & Smith, P.C., Martinsville, Va., for Martinsville Nylon Employees' Council Corp.

Alfred Miller, Steven S. Honigman, Peter N. Greenwald, Miller, Singer & Raives, P.C., New York City, on brief, for amicus curiae.

Before PHILLIPS and MURNAGHAN, Circuit Judges, Walter E. HOFFMAN, Senior United States District Judge, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

This is an appeal by certain pension-eligible employees of DuPont de Nemours & Co. (DuPont) from a judgment dismissing their action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* The issue is whether conditioning the availability of a general severance pay program for these claimants upon their acceptance of a deferral of pension benefits violated their rights under the

ADEA. We agree with the district court that it did not, and we affirm.

## I

In order to facilitate a reduction in the work force at its Martinsville, Virginia plant, DuPont instituted a so-called Voluntary Reduction of Force (VROF) program. Designed to preserve jobs for younger employees with little seniority while at the same time fully honoring vested seniority and lay-off rights,[1] the program offered severance pay based upon seniority as an inducement to voluntary retirements. As originally set up, the VROF program was not offered at all to pension-eligible employees, that is, employees over the age of fifty with fifteen years of work experience with DuPont. When the local union raised the issue, DuPont modified the program to extend it to pension-eligibles, but on the condition that they accept a deferral of certain pension benefits that otherwise would be received upon their leaving DuPont's employment.

A group of pension-eligible employees (Barker) filed suit against DuPont and the local union under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a). They claimed that DuPont violated the Act by conditioning pension-eligible employees' participation in the VROF program on acceptance of deferral of pension benefits. And they claimed that the union violated § 623(c)(3) of the Act by causing DuPont to discriminate on the basis of age. Specifically, the claims were that the VROF severance pay program represents a benefit or privilege of employment within the meaning of § 623(a) of the ADEA and that discrimination on the basis of pension eligibility is equivalent to discrimination on the basis of age. The district court granted summary judgment for DuPont and the

union, finding that as a matter of law § 623(f)(2) immunized any discrimination on the basis of age in this case because the VROF was a bona fide seniority system.[2]

We affirm, but on the alternative basis that, as a matter of law, DuPont's actions did not constitute discrimination on the basis of age. We therefore do not reach the issue of whether DuPont would have a valid § 623(f)(2) defense.

## II

The purpose of the VROF program was to offer employees a substitute, in the form of severance pay, that would compensate them for giving up their right to keep their jobs under the layoff provisions of the collective bargaining agreement. Since the program was wholly voluntary, only those workers who valued the severance pay at least as highly as the right to continue work would take advantage of the program.

We hold simply that no discrimination within contemplation of the ADEA resulted to pension-eligible employees by virtue of the condition imposed for their eligibility to participate in the VROF program. No older employees have lost their jobs or been deprived of any benefit of employment in a discriminatory manner under the program. No employee, old or young, lost the right to work by virtue of the VROF program, because all employees had a choice of whether to take the severance pay option. Nor do payments under the VROF program represent a fringe benefit; they are essentially simply a wage substitute intended to compensate an employee who gives up his contract right to work.

Barker relies primarily on *EEOC v. Westinghouse Electric Corp.*, 725 F.2d 211 (3d Cir.1983); and *EEOC v. Borden's, Inc.*, 724 F.2d 1390 (9th Cir.1984), both of which

---

**1.** Under the terms of the collective bargaining agreement, DuPont must lay off employees with the least seniority first.

**2.** Section 623(f) provides:
It shall not be unlawful for an employer ...
(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance

plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual.

found that denial of severance pay and layoff income benefits to employees eligible for retirement benefits upon plant closings violated the ADEA. Barker's claim is readily distinguishable from the claims raised in those cases.[3]

When an employer gives severance pay or related benefits to employees as part of a plant closing, no relationship exists between the value of the job given up and the value of the benefit. Severance pay in that context is an arbitrarily determined amount that can be thought of as a fringe benefit rather than compensation for not working. In contrast, DuPont's severance pay offer was designed exclusively to induce employees legally entitled to continue to work to forego that entitlement. The payments here therefore represented compensation for giving up the right to earn wages. As such, they are properly viewed as a wage substitute, not as a fringe benefit.

Our characterization of the severance pay under DuPont's VROF as a wage substitute is crucial, for it makes clear that what Barker was seeking in district court was the right both to retirement benefits *and* the wage substitute of severance pay. Barker's claim of discriminatory treatment fails because the receipt of retirement benefits under DuPont's program is founded upon termination of wage earning by the employee. As we view the matter, the modified VROF program simply made the continued earning of wages by those who declined severance pay and the acceptance of severance pay by those who chose the option of not continuing to earn wages functional equivalents for the critical purpose of determining the accrual date of retirement benefits. Taking the severance pay option amounted in effect to additional wage earning necessitating the deferral of pension benefits in exactly the same way that continuing to work would necessitate deferral.

Hence, we find that DuPont did not truly require pension-eligible employees to give up anything of value not also required of others in its operation of the VROF program. Giving pension-eligible employees the choice of participating in the VROF gave them the additional option given to all other employees of giving up the right to work for severance pay. They did not lose their right to work or their right to retire immediately with full pension benefits. The fact that such employees had to accept deferral of pension benefits if they chose the VROF option simply reflects the fact that voluntarily accepting severance pay for giving up the right to work is functionally equivalent to additional wage earning.[4] We therefore conclude that no discrimination on account of age—or on any account—resulted.

On this basis, we affirm the judgment of the district court.

AFFIRMED.

---

**3.** We do not express an opinion regarding the validity of the reasoning in *Westinghouse* and *Borden's*.

**4.** In *Patterson v. Independent School District # 709*, 742 F.2d 465, 468 (8th Cir.1984), the court held that a voluntary early retirement program that gave decreasing benefits as the employee approached age 65 was protected under 29 U.S.C. § 623(f)(2), *see supra* n. 2, because it did not give the employer the power to forcibly retire older workers.

We do not reach the issue of whether all bona fide voluntary retirement systems are protected under § 623(f)(2), but we note that the *Patterson* court found the sliding scale of diminishing benefits to be justified since its purpose was to encourage voluntary early retirement. *Patter-*son, 742 F.2d at 469. The court recognized that, as in this case, the severance payments for giving up the contract right to work represented compensation. Since a younger worker gives up the right to work for a longer period of time, the sliding scale of diminishing benefits was appropriate, and instead of representing discrimination on the basis of age, simply reflected the reality that the younger worker deserved more wage-substitute pay than an older worker closer to retirement age.

The result in *Patterson* is consistent with our distinction between wage-substitute types of severance pay found in voluntary termination programs and arbitrarily fixed severance payments made as part of involuntary work termination programs.