54 F.3d 1412
 41 Fed. R. Evid. Serv. 1157
 Merle C. BRADFORD, Plaintiff/Appellant,
Thomas E. Buckley, Plaintiff,
Ronald V. Dinga, Ronald R. Merzweiler, George J. Mueller,
Plaintiffs/Appellants,
Richard E. Neiman, Plaintiff,
Dolores J. Quillen, Nancy D. Rasch, Pauline M. Richardson,
Judith A. Riegal, Francis L. Schwinn, Patricia L. Sturgis,
James Toebe, Kenneth H. Vorderstrasse, Sharon E. Wind, Ray
L. Jorn, Fred F. Iwan, Plaintiffs/Appellants,
Shirley A. Joslin, Plaintiff,
Anthony T. Kotowski, Thomas J. Lauretta, Jr., Maureen
Robeen, Carol A. Smith, Barbara D. West, Leonora
M. Wolf, Mary Lou Zonza, Plaintiffs/Appellants,
v.
NORFOLK SOUTHERN CORPORATION, and its subsidiaries, or
affiliates, Norfolk and Western Railway Company,
Southern Railway Company, Defendants/Appellees.
 No. 94-2625.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 16, 1995.
Decided May 18, 1995.
 
 Jean E. Jones, St. Louis, MO, argued (William F. Rogers, on the brief), for appellant.
 Thomas Weaver, St. Louis, MO, argued (Timothy K. Kellett and Joan Z. Cohen, on the brief), for appellee.
 Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 Merle C. Bradford and 25 co-plaintiffs filed suit against their employer in January 1992, alleging discriminatory practices in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Secs. 621-34, and the Missouri Human Rights Act, Mo.Rev.Stat. Secs. 213.010-.137. The plaintiffs were at one time all rate clerks in the St. Louis office of Norfolk & Western Railway Company, a wholly owned subsidiary of Norfolk Southern Railway Corporation, which, in turn, is a wholly owned subsidiary of Norfolk Southern Corporation (collectively "Norfolk Southern"). At the close of the clerks' case, the district court[1] entered a judgment as a matter of law for Norfolk Southern because the clerks had failed to establish a prima facie case of discrimination. On appeal, the 22 remaining plaintiff-clerks ("clerks") assign as error the exclusion of significant amounts of evidence and further claim that the remaining evidence did in fact establish a prima facie case. We affirm.
 
 I.
 
 2
 Norfolk Southern is an integrated railway system whose revenue accounting department is headquartered in Atlanta, Georgia. In August 1990, rate clerks in Norfolk Southern's St. Louis office were offered a separation package composed of a $40,000 lump sum distribution, medical benefits for those 55 years old and older, and relocation expenses to anywhere in the continental United States. Twenty-two employees accepted this offer. In October 1990, Norfolk Southern announced its intention to move its rate work from St. Louis to Atlanta because the St. Louis office was going to close. The union resisted this move, contending that it would violate the terms of numerous protective agreements afforded employees as a result of Norfolk Southern's historic mergers and consolidations. Norfolk Southern eventually yielded and withdrew its proposed Atlanta transfer. In December 1990, however, Norfolk Southern notified the St. Louis office rate clerks that their work was being transferred to Roanoke, Virginia, the historic headquarters of the Norfolk & Western Railway. The union did not contest this move. The clerks were given the option of following their work to Roanoke, receiving a separation package of approximately $40,000, or bumping (i.e., displacing an employee with less seniority) into another position in St. Louis in accord with their seniority rights. Nine of the clerks transferred to Roanoke, one was able to bump into another position in St. Louis, and the remaining twelve accepted the separation package.[2]
 
 
 3
 The clerks who transferred to Roanoke testified that the working conditions in Roanoke were considerably less pleasant than those they were accustomed to in St. Louis. There was a shortage of telephones and tariff books. The room the clerks were placed in was in disrepair and was furnished with antiquated furniture. The supervision was also somewhat disorganized because the supervisors commuted from Atlanta. Norfolk Southern, however, viewed these conditions as temporary because it was constructing a new office building in downtown Roanoke, where some of the clerks now work, and was also planning to eventually consolidate all the rate work in Atlanta. In January 1992, Norfolk Southern announced this work transfer, thereby eliminating the need to retain any rate clerks in Roanoke. The clerks were again presented the options of transferring, bumping into another position, or accepting a separation agreement of $35,000 plus medical coverage for those aged 55 and older. This time, eight of the clerks bumped into different positions in Roanoke, with one accepting the separation package. No clerk who transferred to Roanoke lost any benefits, and several of the clerks actually received slight pay increases.
 
 
 4
 The clerks' theory at trial was that the series of moves was merely an attempt to get rid of older employees that Norfolk Southern knew would not follow the work around the country. The clerks proceeded under the McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973), burden-shifting theory because there was no direct evidence of discrimination. The same analysis applies under the Missouri Human Rights Act. See Rinehart v. City of Independence, Mo., 35 F.3d 1263, 1265 n. 1 (8th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1822, 131 L.Ed.2d 744 (1995); Finley v. Empiregas, Inc., 975 F.2d 467, 473 (8th Cir.1992). The clerks essentially composed two separate groups: those who did not transfer to Roanoke, who alleged that they were forced into accepting the separation package offered by Norfolk Southern and thereby were constructively discharged; and those who did transfer, who alleged that they were forced to do so solely because of their age. The one clerk who bumped into another position in St. Louis claimed that he too was discriminated against by being forced into this choice. Norfolk Southern countered that these moves were part of an ongoing long-term accounting consolidation in keeping with the evolution of the corporate entity. Norfolk Southern did not contest that the clerks were all over 40 years old, and there was also no question that they were doing satisfactory work. The district court ruled, however, that the clerks had failed to make out the remaining elements of a prima facie case, i.e., that Norfolk Southern had engaged in an adverse employment practice whereby the clerks were treated worse than younger employees.
 
 II.
 A. Evidentiary Exclusions
 
 5
 The clerks seek to supplement the record on appeal with those evidentiary exhibits that were excluded by the district court. Norfolk Southern does not contest this motion. We grant the motion and deem the additional materials submitted with the case.
 
 
 6
 The clerks claim that the district court erred in excluding testimony about personal circumstances that made it difficult for the clerks to move to Roanoke. Although under an appropriate set of facts a showing of personal circumstances could conceivably be relevant to a determination of constructive discharge, there was no showing that Norfolk Southern possessed any knowledge of the clerks' personal circumstances or that they were a factor in Norfolk Southern's decision to consolidate work and transfer employees. Accordingly, the clerks' personal circumstances do not support their claim of constructive discharge. Smith v. Goodyear Tire & Rubber Co., 895 F.2d 467, 473 (8th Cir.1990) (quoting Cherchi v. Mobil Oil Corp., 693 F.Supp. 156, 163 (D.N.J.), aff'd, 865 F.2d 249 (3d Cir.1988) (table)); see Gray v. York Newspapers, Inc., 957 F.2d 1070, 1086 (3d Cir.1992) (recognizing test as an objective one); see also Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir.1981) (employer must intend to force out employee). Thus, the district court did not abuse its discretion in refusing to allow such testimony. Nor did the district court abuse its discretion in excluding testimony by those who did not transfer concerning the working conditions they expected to encounter, their concerns about job security, and the general nature of the Roanoke job market. Such speculative considerations do "not constitute 'colorable evidence' " of a constructive discharge claim. Smith, 895 F.2d at 473 (quoting Cherchi, 693 F.Supp. at 163 n. 6).
 
 
 7
 Despite the court's ruling, the clerks repeatedly sought to introduce testimony, from both those St. Louis clerks who separated and those who followed their work to Roanoke, about the personal calculus their decisions entailed. Understandably, such a long distance transfer was no doubt a major disruption, particularly for those with long-time ties to the community. Absent some relevant legal basis for allowing the testimony of personal circumstances, however, of which we find none present here, the district court properly limited such testimony. Relevance is not defined by what is designed to evoke a jury's unfettered sympathies; rather, it is limited to that which makes the existence of a fact in issue more or less probable. Fed.R.Evid. 401. The clerks failed to show how their proffered evidence would have either aided in developing a prima facie case under McDonnell Douglas or tended to beget an inference of discrimination. Likewise, the district court did not err in excluding cumulative testimony about the working conditions actually experienced in Roanoke by those clerks who transferred, for they made no claim of constructive discharge, and such cumulative testimony would have added nothing to the development of their prima facie case. Nor did the district court err in refusing to allow the clerks to speculate about the extent of their rights under the collective bargaining agreements.
 
 
 8
 The clerks next contend that the district court abused its discretion in excluding evidence of a 1987 consolidation of rate work from Roanoke and Cleveland to St. Louis and the transfer of employees from Cleveland to St. Louis. The clerks also sought to introduce evidence of the average ages of the Cleveland employees and other circumstances surrounding that move, contending that because some older clerks did not transfer to St. Louis from Cleveland, Norfolk Southern knew that work transfers would result in attrition of older employees.
 
 
 9
 A number of clerks did testify that they had worked in Cleveland and transferred to St. Louis in 1987. The clerks, however, failed to develop further any competent evidence showing the relevance of this transfer to their claims. The clerks proferred no competent testimony regarding the circumstances surrounding the transfer or the extent of the transferees' collective bargaining rights. See Fed.R.Evid. 602 (personal knowledge requirement for testimony); see also McCrary-El v. Shaw, 992 F.2d 809, 810-11 (8th Cir.1993) (noting discretion to determine if testimony is properly qualified under Rule 602). Moreover, the clerks did not contest the legitimacy of the 1987 consolidation and adduced nothing to expose it as in any way motivated by discriminatory bias. Similarly, the use of this testimony as circumstantial evidence of animus in the move from St. Louis to Roanoke would have been of little or no probative value. The inference that the clerks attempt to draw from this evidence requires too great a logical leap of faith. A recognition of the obvious conclusion that transfers will result in some resignations does not, without more, allow an inference of discrimination. The district court understandably wished to avoid interjecting collateral issues into the trial that would have had the effect of calling the 1987 consolidation into question. Focusing attention on the 1987 consolidation would have infused the trial with an additional element that would have served only to cloud the real issues surrounding the 1990 transfer. The same analysis applies to the evidence relating to the 1992 transfer from Roanoke to Atlanta.
 
 
 10
 The clerks also sought to introduce evidence of the ages of the Roanoke clerks as support for the claim that management treated this younger[3] group of employees more favorably in the 1987 work consolidation. No evidence was offered, however, that tended to show that the Roanoke clerks had similar employment rights as those based in St. Louis or Cleveland. Nor did the clerks show that the conditions and availability of positions were similar in the three cities. Indeed, the 1987 transfer serves to refute the clerk's claim. Rather than supporting an inference that Norfolk Southern intended to discriminate against older employees, it supports the contrary inference, for although the personnel situation in Roanoke allowed those younger employees to bump into new positions, they were not presented the option of retaining their then-held positions and following their work. Accordingly, the district court did not abuse its discretion in excluding this evidence.
 
 
 11
 Although the clerks make much of a letter from Norfolk Southern to the union stating that the 1990 transfer would be much like that in 1987, we conclude that this evidence also fails to provide an inference of discrimination. The 1987 transfer was premised on the authority of an arbitration ruling. When the union balked at the proposed transfer to Atlanta in 1990, both sides subsequently agreed that a transfer to Roanoke was permissible, much as was the 1987 transfer. Reference to this letter shows merely that Norfolk Southern was acting pursuant to a pre-established authority that was accepted as legitimate by the union. Although discrimination under the pretext of a lawful business decision is still unlawful discrimination, see Neufeld v. Searle Labs., 884 F.2d 335, 340 (8th Cir.1989), the clerks failed to adduce any competent evidence that would allow a rational juror to infer from this letter that Norfolk Southern effected this facially legitimate transfer for the illegitimate purpose of ridding itself of older employees.
 
 
 12
 Evidence of other employer actions is admissible when it supports an inference of discrimination. E.g., Phillip v. ANR Freight Sys. Inc., 945 F.2d 1054, 1056 (8th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 81, 121 L.Ed.2d 45 (1992); Hawkins v. Hennepin Tech. Ctr., 900 F.2d 153, 155-56 (8th Cir.), cert. denied, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). The evidence, however, must assist in the development of a reasonable inference of discrimination within the context of each case's respective facts. The 1987 transfer admits merely of an inference of rate work consolidation. The clerks offered nothing tending to show that the move was motivated by age bias. They also offered insufficiently founded statistical and comparative evidence of the Cleveland, Roanoke, and Atlanta situations to allow an inference of discrimination. They simply cannot show through the 1987 consolidation that older employees were ever treated less favorably.
 
 
 13
 The clerks also contest the exclusion of a list of the St. Louis clerks that delineates their age, race, gender, and seniority. Although the list permits an inference that Norfolk Southern was aware of the demographic data relevant to the St. Louis clerks at the time it decided to consolidate the rate work, we cannot say that the district court abused its discretion in excluding it. On the facts before us, we find this list substantially more prejudicial than probative. See Fed.R.Evid. 403; see also Stokes v. City of Omaha, 23 F.3d 1362, 1367 (8th Cir.1994) (improper question relating to age did not support finding of discrimination); Smith, 895 F.2d at 472 (single reference to age not generate an inference of discrimination).
 
 
 14
 Finally, the clerks contend that, aside from the individual rulings, the totality of the evidentiary exclusions was prejudicial to their case because they necessarily relied entirely on circumstantial evidence. See Phillip, 945 F.2d at 1056; Hawkins, 900 F.2d at 156; Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir.1988). This bricks-make-a-wall argument too must fail. Apart from the testimony relating to personal circumstances, many of the relevant exclusionary rulings were made during the development of the clerks' case rather than as blanket exclusions of broad categories of evidence before the trial began. Cf. Estes, 856 F.2d at 1103 (noting that broad pre-trial exclusions unduly hampered plaintiff's case). Although we appreciate the need for flexibility in developing the prima facie case to properly accommodate varying factual circumstances, see Throgmorton v. United States Forgecraft Corp., 965 F.2d 643, 646 (8th Cir.1992); Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1269 (8th Cir.), cert. denied, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987), the district court's rulings did not prevent the clerks from proving their case; rather, it was their own failure to develop competent, relevant evidence that caused their case to founder. Here the proffered evidence would have interjected collateral and legally incognizable circumstances, rather than constituting evidence from which the jury could have drawn an inference of discrimination. The district court cannot be faulted for excluding evidence based entirely on unfounded testimony. Indeed, our reading of the transcript persuades us that the district court was quite patient throughout the presentation of the clerk's case notwithstanding counsel's repeated attempts to introduce improper and previously excluded testimony.[4]B. Prima Facie Case
 
 1. adverse employment action
 
 15
 The clerks contend that despite the evidentiary exclusions, their remaining evidence makes out a sufficient prima facie case of discrimination to preclude judgment as a matter of law. We disagree. Those clerks who separated have no claim of constructive discharge as an adverse employment action. As discussed above, constructive discharge occurs when an employer intentionally renders working conditions so intolerable that an employee is essentially forced to leave the employment. Smith, 895 F.2d at 472; Bunny Bread, 646 F.2d at 1256; Hukkanen v. International Union of Operating Eng'rs, 3 F.3d 281, 185 (8th Cir.1993) (reasonably foreseeable consequences deemed intentional). Work conditions are deemed intolerable if a reasonable employee would find them as such. Maney v. Brinkley Mun. Waterworks & Sewer Dep't, 802 F.2d 1073, 1075 (8th Cir.1986). Accordingly, the mere offer of a separation package fails to establish a constructive discharge, see Smith v. World Ins. Co., 38 F.3d 1456, 1461 (8th Cir.1994) (early retirement), and thus the "attractive" offer of August 1990 provides no evidence of discrimination.
 
 
 16
 A choice between separation "or continuing to work under intolerable conditions" may give rise to a claim of constructive discharge. Id. There may be situations in which a transfer to another location is so intolerable when viewed in the light of the attendant circumstances that a finding of constructive discharge is warranted. See, e.g., Christensen v. Equitable Life Assur. Soc'y, 767 F.2d 340, 342 (7th Cir.1985), cert. denied, 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986); Spagnuolo v. Whirlpool Corp., 717 F.2d 114, 118-19 (4th Cir.1983). That is not the case here, however. Those clerks who separated did not encounter the working conditions at Roanoke, and they cannot fault Norfolk Southern based solely on allegations of Spartan accommodations, particularly when other employees did in fact transfer. Similarly, this group of clerks has failed to establish an inference that Norfolk Southern intended to force them to quit by presenting them with the Hobson's choice of transferring or resigning. Rather, their complaints are based primarily on factors well outside the knowledge and control of Norfolk Southern, for it was personal circumstances that caused these clerks to elect to separate rather than to elect to transfer and thus retain their jobs, benefits, and job security. Moreover, the mergers and consolidations Norfolk Southern was undergoing throughout this time frame and the precedent of the earlier arbitration ruling also militate against a finding of constructive discharge. See Spagnuolo, 717 F.2d at 118. The clerks had to realize, given the nature of the railroad industry and the job protection provisions of the labor agreements negotiated on their behalf by their union, that they did not possess an immutable right to remain in one location during the remainder of their working days.
 
 
 17
 Although those clerks who did transfer to Roanoke may have been dissatisfied by the working conditions they found there, none of them left the company as a result. Further, they retained the same responsibilities and compensation. See Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 135-36 (7th Cir.1993). These clerks claim, however, that the transfer, combined with the poor working conditions, provides sufficient evidence of adverse employment action to infer Norfolk Southern's age-related animus. Those facts are not so egregious as to warrant a finding of adverse action, however. The working conditions that greeted those clerks who transferred to Roanoke were temporary, and nothing in the record supports the theory that any physical or supervisory inadequacies were the result of a discriminatory intent. Nor is there an indication that younger employees were or would have been treated any better. The clerks' mere skepticism as to Norfolk Southern's motive is insufficient to generate an inference of discrimination. See Morgan v. Arkansas Gazette, 897 F.2d 945, 950 (8th Cir.1990).
 
 2. disparate treatment
 
 18
 "[T]he law protects all older employees ... from being treated more harshly than they would have been if they were young," Neufeld, 884 F.2d at 339, but any evidence of such disparate treatment is exactly what the clerks have failed to tender. Even if we assume that the transfer constituted an adverse employment action, compare Barber v. American Airlines, Inc., 791 F.2d 658, 660 (8th Cir.) (finding adverse action in forced transfer to another city or retirement with no right to bump into different positions in the same location), cert. denied, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986) with Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir.1994) (reassignment with no diminution of "title, salary, or benefits" insufficient to establish adverse action) and Crady, 993 F.2d at 135-36 (finding no adverse action in transfer to another city where responsibilities were not diminished and salary and benefits remained the same), the clerks' claims must still fail.
 
 
 19
 The ADEA does not protect against the imposition of any employment hardship on those over the age of 40. Rather, the law is designed to prevent age-based discrimination. Therefore, the clerks' "mere membership in the protected class does not permit an inference of age discrimination." Serben v. Inter-City Manuf. Co., 36 F.3d 765, 766 (8th Cir.1994) (per curiam), cert. denied, --- U.S. ----, 115 S.Ct. 1402, 131 L.Ed.2d 290 (1995). Nor do Norfolk Southern's offers of separation agreements to other protected employees. See id.; Gray v. New England Tel. & Tel Co., 792 F.2d 251, 255 (1st Cir.1986) (early retirement program not shown to force out older employees). These offers were made to all the clerks, and the record is devoid of any evidence that would lead to an inference of age-related bias on the basis of these arrangements.
 
 
 20
 The clerks point to statements by their supervisor George Hassen to the effect that the August 1990 voluntary separation program and later transfer of employees must have been premised on the potential attrition of older employees. This speculation is not only highly prejudicial, but also not at all probative of the actual legal issues involved. Hassen had no direct knowledge of managerial intent and was not involved in the consolidation decisions in any capacity. Even assuming that Hassen did make the statements attributed to him, his personal opinion, without more, is insufficient to allow a reasonable jury to infer discrimination on the part of Norfolk Southern. See United States v. Doe, 960 F.2d 221, 223 (1st Cir.1992) (noting that the test is whether a reasonable trier could find that the witness had personal knowledge from which he could draw an inference); Visser v. Packer Eng'g Assoc., Inc., 924 F.2d 655, 659 (7th Cir.1991) (en banc) (proper to strike affidavit based on "amateur psychoanalysis" rather than personal knowledge).
 
 
 21
 At first blush, it may appear odd that Norfolk Southern shifted work away from Roanoke and then three years later changed its position and sent the same or comparable work back to Roanoke, along with the clerks responsible for that work. This decision, however, is explained by the interaction of the labor-management relationship in the context of Norfolk Southern's history of mergers and consolidations. Further, Atlanta is the headquarters of Norfolk Southern's revenue accounting department, and the desirability of consolidating all rate work there is not a matter calling for judicial oversight. Jorgensen v. Modern Woodmen of America, 761 F.2d 502, 505 (8th Cir.1985) ("The ADEA is not intended to be used as a means of reviewing the propriety of a business decision...."); see Lidge-Myrtil v. Deere & Co., 49 F.3d 1308, 1311 (8th Cir.1995); Gill v. Reorganized Sch. Dist. R-6, 32 F.3d 376, 379 (8th Cir.1994). Similarly, the fact that the work eventually ended up in Atlanta, where employees had less seniority than that of the St. Louis group, fails to provide a sufficient inference of age discrimination in this case. See Hazen Paper Co. v. Biggins, --- U.S. ----, ---- - ----, 113 S.Ct. 1701, 1706-07, 123 L.Ed.2d 338 (1993). Indeed, much of the clerks' claims implicitly impute as a motive to Norfolk Southern the desire to be rid of those employees with greater benefits. In Hazen Paper, however, the Supreme Court held that a claim under the ADEA must be based on age discrimination rather than on the desire to unload benefits or on some other forms of discrimination. Id. at ----, 113 S.Ct. at 1707 (discrimination to avoid the vesting of pension benefits "would not, without more, violate the ADEA"). Essentially, the clerks would have us require Norfolk Southern to maintain a satellite office in St. Louis or pay them for doing nothing. This we cannot do, for the clerks have failed on all fronts to generate an initial inference of discrimination sufficient to present a submissible case. See Leichihman, 814 F.2d at 1269.
 
 
 22
 No doubt a number of the clerks faced a difficult situation when confronted with the prospect of a job transfer, and we do not minimize the personal trauma attendant upon being faced with the choice of transferring or separating from employment, but even giving their evidence the benefit of all reasonable inferences, we still must conclude that the clerks established no prima facie inference of discrimination.
 
 
 23
 The judgment is affirmed.
 
 
 
 [1]
 The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 These totals reflect the number of clerks who are current parties to the litigation, not the total number of clerks involved in the transfer
 
 
 [3]
 The Roanoke clerks were on average 42 years old, whereas the St. Louis and Cleveland clerks averaged ages 53 and 54 respectively
 
 
 [4]
 The clerks tell us that "the cold transcript pages cannot recreate the atmosphere of sheer terror that the court's repeated admonitions and threats of mistrial and extraordinary costs created for plaintiffs and their counsel." Appellant's Brief at 18. As indicated above, however, our reading of the transcript satisfies us that the district court showed great patience with the clerks' counsel, denying some eleven separate motions for mistrial made by Norfolk Southern during the course of the trial. Our first inclination was to let the clerks' hyperbolic characterization of the district court's rulings pass unmentioned as the reaction of disappointed litigants, but in fairness to the district court we feel compelled to respond to what we conclude is an entirely unwarranted aspersion on the district court's conduct of the trial