# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3425

_____

| | | |
|---|---|---|
| Tom Cooney, Jr.; Francis F. Boganowski; David M. Burke; Henry F. Kammerer; Jeanine K. Lendt; Loren C. Mathison; Ruth Nusser; Anthony H. Paczosa; Darwin H. Peterson; Don P. Rock; Daniel R. Sinnott; Homer T. Smith; Roger O. Stapes; William S. Sus; Michael Treat; Harold G. Wagner; Betty B. Willmer, | * * * * * * * * * * | |
| Appellants, | * * | |
| v. | * * | Appeal from the United States District Court for the District of Nebraska. |
| Union Pacific Railroad Company, | * * | |
| Appellee. | * | |

_____

Submitted: May 18, 2001

Filed: July 23, 2001

_____

Before LOKEN, ROSS, and FAGG, Circuit Judges.

_____

ROSS, Circuit Judge.

Tom Cooney, Jr. and sixteen co-plaintiffs (appellants) appeal from the district court's[1] grant of summary judgment in favor of Union Pacific Railroad Company (UP) on their disparate treatment claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634.  We affirm.

**Background**

In 1996, the government approved the merger of UP and Southern Pacific Railroad (SP).  Pursuant to the labor protective conditions of New York Dock Ry v. United States, 609 F.2d 83 (2d Cir. 1979), the railroads and the Transportation-Communications Union (the Union) entered into an agreement in order to accommodate SP clerical employees who wanted to transfer to UP's Omaha, Nebraska facility.  The agreement provided that UP would offer buyouts of up to $95,000 to its employees to the extent that the number of SP employees applying for positions in Omaha exceeded the number of available positions.  UP's Omaha clerical operations were divided into six zones.  The agreement, as supplemented, provided that clerks with the greatest seniority in each zone received available buyouts within the zone.  In past mergers, UP had offered buyouts on the basis of system-wide seniority, instead of zone-by-zone seniority.

Appellants were accounting clerks in Zone 212, ranging in age from 58 to 62 years and in seniority from 27 to 42 years.  In Zone 212, there were 42 buyout requests and five offers, but none to appellants, who continued to work at UP.  In Zone 201, there were 51 buyout requests and 51 offers.

In April 1999, appellants filed a complaint in the district court, alleging violations of the ADEA and state law.  Appellants raised a disparate impact claim under the ADEA, asserting that the buyout program adversely impacted employees in Zone 212 who were 58 to 63 years old, while favoring younger employees in Zone 201 who were 40 to 56 years old.  In September 1999, this court decided EEOC v. McDonnell Douglas Corp.,

---

[1]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

191 F.3d 948, 950 (8th Cir. 1999), in which we refused to recognize disparate impact claims under the ADEA for subgroups of workers within the protected class of persons who are at least 40 years old. In December 1999, appellants amended their complaint to add a disparate treatment claim.

The district court granted UP's motion for summary judgment. The court held that appellants' disparate impact case was foreclosed by EEOC v. McDonnell Douglas. The court further held that appellants had failed to establish a prima facie treatment case, reasoning that since appellants were still working at UP on the same terms and conditions, they had not suffered an adverse employment action. The court also declined to exercise supplemental jurisdiction over the state claim.

**Discussion**

We review the district court's grant of summary judgment de novo. Spears v. Missouri Dep't of Corr. & Human Res., 210 F.3d 850, 853 (8th Cir. 2000). "Summary judgment is proper where the evidence, when viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Id. Appellants do not challenge the district court's grant of summary judgment on their disparate impact claim. However, they challenge the court's grant of summary judgment on their disparate treatment claim, asserting they established a prima facie case. To establish a prima facie treatment case, among other things, appellants had to show that they suffered an adverse employment action. Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999). "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." Spears, 210 F.3d at 853. "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard." Id.

Appellants concede that "none of them left [UP] as a result" of the denial of their applications for buyouts. Bradford v. Norfolk Southern Corp., 54 F.3d 1412, 1420 (8th

Cir. 1995). Nor do they dispute that "they retained the same responsibilities and compensation." Id. Rather, they argue they suffered an adverse employment action because the denial of their applications for buyouts resulted in "a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). In the facts of this case, we disagree. This case is similar to Britt v. E.I. DuPont de Nemours & Co., 768 F.2d 593 (4th Cir. 1985). In Britt, to facilitate a reduction in force, the employer instituted a voluntary severance program. The court held that a buyout under the program was "essentially simply a wage substitute intended to compensate an employee who gives up his [] right to work." Id. at 594. The court observed that "[n]o employee, old or young, lost the right to work by virtue of the [voluntary] program." Id. Such is also the case here.

Appellants' reliance on EEOC v. Westinghouse Elec. Corp., 725 F.2d 211 (3d Cir. 1983), cert. denied, 469 U.S. 820 (1984), and EEOC v. Borden's, Inc., 724 F.2d 1390 (9th Cir. 1984), is misplaced. Those cases held that denials of severance benefits to retirement-eligible employees violated the ADEA. Here, severance benefits were awarded on the basis of location and seniority, not retirement eligibility. Moreover, those cases did not address the issue in this case of whether employees who were denied severance but retained their jobs had suffered an adverse employment action.[2] As the court in Britt explained, the cases involved plant closings, and severance pay in connection with the closings was thought to be "a fringe benefit rather than compensation

---

[2]The cases held that because early retirement plans were not based on age-related cost factors they were not entitled to the safe haven of 29 U.S.C. § 623(f)(2), which, at the time, provided that a "bona fide employee benefit plan" was lawful unless it was a subterfuge to evade the ADEA. The holdings were overruled by Public Employees Ret. Sys. of Ohio v. Betts, 492 U.S. 158 (1989). However, in 1990, Congress statutorily overruled Betts by amending § 623(f)(2) and adding § 630(l). See Erie County Retirees Ass'n v. County of Erie, 220 F.3d 193, 203-08 (3d Cir. 2000) (discussion of 1990 ADEA amendments). Because neither party addresses the application of § 623(f)(2) to this case, neither do we.

for not working." Britt, 768 F.2d at 595. In contrast here, the buyout program was designed "to induce employees legally entitled to continue to work to forego that entitlement." Id. Even if the buyouts can be characterized as benefits, we do not believe the denials caused appellants to suffer an adverse employment action. Appellants concede that after the denials they continued to work at UP under the same terms and conditions, with no loss of salary or benefits. See EEOC v. Sears Roebuck & Co., 883 F. Supp. 211, 214 (N.D. Ill. 1995) (employees who declined voluntary severance pay and retained jobs under same terms and conditions had not suffered an adverse employment action).

In any event, even if appellants had established a prima facie treatment case, summary judgment would be appropriate. If a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate reason for the adverse action. Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 955 (8th Cir. 2001) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). If the employer satisfies its burden, the plaintiff must set forth "evidence sufficient to raise a question of material fact as to whether [the employer's] proffered reason was pretextual and to create a reasonable inference that age was a determinative factor in the adverse employment decision." Id. (internal quotation omitted). "'The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination[,]'" and the plaintiff bears the burden of proof. Id. (quoting Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 152 (2000)).[3]

Appellants put forth no evidence raising a reasonable inference that UP's reason for denying their applications for buyouts was pretextual and that age was a determinative

_____

[3]Appellants misunderstand the Supreme Court's decision in Reeves. In that case, the Court held that in certain circumstances a prima facie case, combined with sufficient evidence of pretext, may, but not necessarily, be sufficient evidence of intentional discrimination. 530 U.S. at 148. In this case, Reeves is not implicated. Appellants neither established a prima facie case nor set forth evidence of pretext.

factor in the denials. Indeed, in their complaint, appellants alleged that the buyouts were structured on the basis of zone-by-zone seniority "for union political purposes." Even if true, the allegation would not support their disparate treatment claim. "[E]mployment decisions motivated by factors other than age (such as salary, seniority, or retirement eligibility), even when such factors correlate with age, do not constitute age discrimination." McDonnell Douglas, 191 F.3d at 952. Contrary to appellants' apparent belief, it is not unlawful for an employer to make decisions based on favoritism or "even unsound business practices, as long as these decisions are not the result of discrimination based on an employee's membership in a protected class." Evers, 241F.3d at 959 (internal quotation omitted). In other words, "a claim under the ADEA must be based on age discrimination rather than on . . . some other forms of discrimination." Bradford, 54 F.3d at 1421. Thus, even if "things were cooked for Zone 201" because of union politics, as appellants allege, that does not show age discrimination.

In this case, the only reasonable inference from the evidence is that appellants were not offered buyouts "because of the locations in which they work, not because of their ages." Trenton v. Scott Paper Co., 832 F.2d 806, 811 (3d Cir. 1987), cert. denied, 485 U.S. 1022 (1988); see also Patterson v. Indep. Sch. Dist. #709, 742 F.2d 465, 468-69 (8th Cir. 1984) (fact that plaintiff could not take advantage of early retirement program did not vitiate legality of program). Although in the past UP had used system-wide seniority in awarding buyouts, the change to zone-by-zone seniority does not raise an inference that it discriminated on the basis of age in this buyout. See Evers, 241 F.3d at 959 (employer's change in lay-off rating process failed to raise inference of age discrimination). "'A company's exercise of its business judgment is not a proper subject for judicial oversight.'" Id. at 956 (quoting Regel v. K-Mart Corp., 190 F.3d 876, 880 (8th Cir. 1999)). Nor does appellants' statistical evidence concerning the impact of the zone-by-zone seniority approach raise an inference of intentional age discrimination. See id. at 958-59; see also Cardenas v. AT&T Corp., 245 F.3d 994, 1000 (8th Cir. 2001) (statistics relevant to impact claim did not support treatment claim). By appellants' own calculations, the

average age of the employees in Zone 201receiving buyouts was 54.5 years, and only one was under 40 years.

We have considered appellants' other arguments. Most relate to their failed impact claim, and none support their treatment claim. See id. at 1001. For example, appellants argue that options other than the zone-by-zone seniority in awarding the buyouts would have had a less adverse impact on them. Although this argument might have been relevant in support of their impact claim, see Evers, 241F.3d at 953-54, it does nothing to show that UP intentionally discriminated on the basis of age in awarding the buyouts. Because appellants "entirely failed to meet [their] burden of showing that [they were] the victim[s] of intentional discrimination," Cardenas, 245 F.3d at 1001, the district court did not err in granting UP's motion for summary judgment.

Accordingly, we affirm the district court's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.