# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4489

_____

United States Equal Employment
Opportunity Commission,

        Plaintiff - Appellant,

Richard Hopkins,

        Intervenor Plaintiff,

   v.

City of Independence, Missouri,

        Defendant - Appellee.

----------------------------------

AARP Foundation Litigation,

        Amicus Curiae on
        Behalf of Appellant.

_____

No. 05-4490

_____

United States Equal Employment
Opportunity Commission,

        Plaintiff,

Appeal from the United States
District Court for the
Western District of Missouri.

Richard Hopkins,               *
                                                 *

             Intervenor Plaintiff -      *
                   Appellant,         *
                                                 *

      v.                               *
                                                 *

City of Independence, Missouri,     *
                                                 *

           Defendant - Appellee.     *

_____

Submitted:  September 28, 2006
Filed:  December 22, 2006

_____

Before WOLLMAN, BOWMAN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The Equal Employment Opportunity Commission (EEOC) and Richard W. Hopkins sued the city of Independence, Missouri, alleging constructive discharge and a violation of  the Age Discrimination in Employment Act (ADEA) and Missouri Human Rights Act (MHRA).  The district court granted summary judgment to the city on all counts.  Having jurisdiction under 28 U.S.C. § 1291, this court reverses as to the age discrimination claim, but affirms on the constructive discharge claim.

I.

Under the city's "Leave Donation Program," employees may donate up to 40 hours of vacation, personal-business, and sick leave to other employees who have a medical condition preventing them from working and exhaust all paid leave.

Qualified employees may receive up to 1,040 hours of donated leave, equal to six months' work.

To qualify for the Program, an employee must (1) be approved for extended medical leave of absence, (2) be able to earn and use accrued sick leave hours, (3) successfully have completed the initial six-month probation, (4) exhaust vacation, personal-business, and sick leave, accrued holidays, and compensatory time, (5) not be receiving or entitled to receive long-term-disability benefits, and (6) "not be eligible for regular retirement." The city's Personnel Policies and Procedures Manual defines regular retirement eligibility as "age sixty (60)" and "vested" in the city's pension plan (requiring five years of local-government service).

Before the adoption of the Program in 1998, the city's Administrative Specialist informed the Personnel Board:

> I have the following concerns about restrictions included in Paragraph 1 of the Proposed Leave Donation Program. **"The employee must not be eligible for regular retirement."** Even though eligible for regular retirement, that may not be what would be in the best interests of the City or the employee, i.e., if the employee will only be off for a few months. Regular retirement age is young. Including this appears to be a form of age discrimination.

Hopkins began working for the city as a Code Compliance Officer in 1994, which entails driving a truck to inspect property and investigate complaints. On November 4, 2002, Hopkins was hospitalized and diagnosed with ventricular tachycardia, a form of heart disease involving rapid heartbeat. Hopkins's physician determined that he was unable to drive for six months following any episode of VT.

City employees became aware of Hopkins's medical condition and began donating leave to him pursuant to the Program. The city's Human Resources

Administrator told Hopkins, "I didn't know that you were that old," and that he was ineligible for the Program. Hopkins asked, "What do you mean?" The administrator responded, "Well, you're of retirement age, Richard, you're over 60. You can't draw donated leave time." As a result, Hopkins was denied participation in the Program.

On November 21, 2002, Hopkins and his wife met with his supervisor, the Human Resources Administrator, and other city personnel to discuss his options. Hopkins's wife avers: "During the meeting the City's Donated Leave Program was discussed and Richard was informed that he was ineligible to utilize the Program due to his age." Unable to drive due to his condition, Hopkins's options included clerical work, retirement, or accommodation under the Americans with Disabilities Act. Hopkins did not resume working, but used unpaid leave under the Family Medical Leave Act (FMLA) until it expired in January 2003.

On February 3, Hopkins indicated that his doctor would not release him to drive before May. He then applied for long-term-disability and requested to extend his FMLA leave. The city approved his extension for unpaid leave. On March 14, Hopkins again informed the city that his doctor had continued his driving restriction. On March 24, city officials met with him to discuss his options. The city summarized the meeting in a letter to Hopkins: "In our opinion, these options include: 1) resignation; 2) an Accommodation Request form be completed by April 7th; 3) retirement; and 4) long-term-disability." Later, he submitted his retirement papers, noting the submission was "under coercion and threat of losing my benefits." The city responded: "It was not and is not our intention to suggest that you be required to choose the option of retiring. For that reason, the City is holding your LAGERS retirement paperwork until April 28, 2003 to allow you time to reconsider your options." The record shows no further developments until Hopkins's retirement took effect on June 1, 2003.

II.

This court reviews de novo the grant of summary judgment, viewing the record most favorably to the non-moving party. *See McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1135 (8th Cir. 2006); *Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 619 (8th Cir. 2006). Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56(c)**; *Knowles v. Citicorp Mortgage, Inc.*, 142 F.3d 1082, 1085 (8th Cir. 1998).

A.

Hopkins alleges he was disqualified from the Leave Donation Program because of his age, in violation of the ADEA. Hopkins's MHRA claim is analyzed under the same analysis as the ADEA claim. *See Mathes v. Furniture Brands Int'l*, 266 F.3d 884, 885 (8th Cir. 2001).

The ADEA provides: "It shall be unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." **29 U.S.C. § 623(a)(1)**. In a disparate treatment case, liability depends on whether age actually motivated the employer's decision. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). To succeed on a disparate treatment claim, the plaintiff must show the employee's age "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Reeves,* 530 U.S. at 141, *quoting Hazen Paper*, 507 U.S. at 610.

Viewing the facts favorably to Hopkins, his age "actually played a role" in the employer's decisionmaking. First, after city employees began donating leave to

Hopkins, the city's Human Resources Administrator called him to tell him he could not participate in the Program. She said, "I didn't know that you were that old." Hopkins asked, "What do you mean?" The administrator responded, "Well, you're of retirement age, Richard, you're over 60. You can't draw donated leave time." Second, according to Hopkins's wife, at the next meeting with key administrators, Hopkins "was informed that he was ineligible to utilize the Program due to his age." These statements are not mere stray remarks in the workplace "unrelated to the decisional process itself." *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 277 (1989) (O'Connor, J., concurring). The statements, viewed most favorably to Hopkins, are statements by decisionmakers related to the decisional process. *See id.*

These oral statements are direct evidence of age discrimination. "Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Quick v. Wal-Mart Stores, Inc.,* 441 F.3d 606, 609 (8th Cir. 2006), *quoting Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir. 2004). *See EEOC v. Liberal R-II School Dist.,* 314 F.3d 920, 923 (8th Cir. 2002) (direct evidence may include evidence of actions or remarks of the employer that reflect a discriminatory attitude); *see also Kneibert v. Thomson Newspapers, Mich. Inc.,* 129 F.3d 444, 452 (8th Cir. 1997); *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (1993). This case is not like *Hanebrink v. Brown Shoe Co.,* 110 F.3d 644, 646, 647 (8th Cir. 1997), where the plaintiff himself testified that no one at the employer said anything that suggested that he was discriminated against because of his age.

The second part of a successful disparate treatment claim is that age "had a determinative influence on the outcome." *Hazen Paper,* 507 U.S. at 610. The city protests at length that age did not have a determinative influence on its decision to refuse leave donation. The city argues that since Hopkins's disqualification from the

Program depends essentially on two characteristics – passing age 60 and attaining five years of service –  retirement eligibility is not a proxy for age.  *But see Hazen Paper,* 507 U.S. at 613 ("Nor do we rule out the possibility of . . . liability under . . . the ADEA where the decision to fire the employee was motivated both by the employee's age and by his pension status").  The city emphasizes that the terms of the Program itself do not expressly mention age and that its motive is to prevent "retirement eligible employees from abusing the policy by drawing 1040 hours of donated leave immediately before retiring."  The city relies on the language in *Hazen Paper*: "When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. . . . even if the motivating factor is *correlated* to age, as pension status typically is."  *Id.* at 611 (emphasis added); *see also EEOC v. McDonnell Douglas Corp.,* 191 F.3d 948, 951, 952 (8th Cir. 1999) ("employment decisions motivated by factors other than age (such as salary, seniority, or retirement eligibility), even when such factors correlate with age, do not constitute age discrimination"); *Cooney v. Union Pacific R.R. Co.,* 258 F.3d 731, 735 (8th Cir. 2001) (same).

The district court agreed that Hopkins's disqualification from the Program was merely correlated with age.  The court stressed that some employees under 60 cannot participate in the Program (due to, e.g., probation status, availability of other leave), while some employees over 60 – with less than five years service – may participate in the Program (which are apparently about ten percent of all employees over 60). The district court distinguished cases where the program at issue explicitly used age to deny benefits.  *See Auerbach v. Bd. of Educ.,* 136 F.3d 104, 110 (2d Cir. 1998) ("age, not years of service, is the factor behind the disparate treatment" when "teachers under the age of 55 who have fulfilled the service requirement have the future option to receive the retirement incentive benefits"); *Huff v. UARCO, Inc.,* 122 F.3d 374, 388 (7th Cir. 1997) (when an employee loses a lump sum payout upon attaining age 55 with 10 years service, the employer's "policy draws an express line between

workers over fifty-five and those under"); ***EEOC v. Borden's, Inc.***, 724 F.2d 1390, 1393 (9th Cir. 1984) (a severance pay policy excluding individuals eligible for retirement violates the ADEA when based on reaching age 55 with 10 years service). *See also* ***EEOC v. Jefferson County Sheriff's Dep't,*** 467 F.3d 571, 579-80 (6th Cir. 2006) (en banc) (when a disability-retirement-benefits plan excludes hazardous-category employees age 55 and older who reach normal retirement age, the plan is facially discriminatory); ***Erie County Retirees Ass'n v. County of Erie,*** 220 F.3d 193, 211 (3d Cir. 2000) (excluding a group from benefits based on Medicare status violates the ADEA since "medicare eligibility follows ineluctably upon attaining age 65" and thus, "is a direct proxy for age"); ***Johnson v. State of New York,*** 49 F.3d 75, 79-80 (2d Cir. 1995) ("the decision to require dual status, with consequent mandatory retirement at 60, is not merely *correlated* with age; unlike *Hazen Paper*, the employer's decision here in fact *implements* an age-based criterion").

The city and the district court ignore that the "correlated" language in *Hazen* applies only where the employer's decision is "wholly" motivated by factors other than age. *See **Hazen Paper,*** 507 U.S. at 611. The key is what the employer supposes about age: "Pension status may be a proxy for age . . . in the sense that the employer may suppose a correlation between the two factors and act accordingly." ***Id.*** at 613; *see also* ***Slathar v. Sather Trucking Corp.,*** 78 F.3d 415, 418-19 (8th Cir. 1996) ("Age discrimination may exist when an employer terminates an employee based on a factor such as experience or salary when the employer presupposes a correlation with age and uses that factor as a proxy for age").

Based on the direct evidence that the city's Human Resources Administrator and other personnel decisionmakers said the disqualification was because of age and acted accordingly, Hopkins raises a genuine issue of material fact as to what the employer supposed about age. In this case, unlike *EEOC v. McDonnell Douglas*, the discriminatory acts were not "isolated" but were the standard operating procedure for

the Leave Donation Program.  *Compare McDonnell Douglas,* 191 F.3d at 952.  The ADEA "requires the employer to ignore an employee's age" in making employment decisions.  *Hazen Paper*, 507 U.S. at 612.

Because there are genuine issues as to material facts, the district court should not have granted summary judgment on the ADEA and MHRA claims.

B.

"Constructive discharge occurs when an employer deliberately makes an employee's work environment so intolerable that resignation is the employee's only plausible alternative."  *Williams v. City of Kansas City,* 223 F.3d 749, 753 (8th Cir. 2000) (applying Missouri law).  "The conduct complained of must have been severe or pervasive enough to create an objectively hostile or abusive work environment, and additionally the plaintiff must subjectively perceive the environment to be abusive."  *Johnson v. Runyon*, 137 F.3d 1081, 1083 (8th Cir.1998) (internal quotations omitted).  "The employer's actions must have been intended to force the employee to quit."  *Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926, 932 (8th Cir. 2000).

Here, the evidence (viewed favorably to Hopkins) does not show a constructive discharge.  The city met several times with Hopkins to discuss his options, including clerical work, accommodation under the Americans with Disabilities Act, and long-term-disability.  When Hopkins wrote that his retirement was "under coercion and threat of losing my benefits," the City responded: "It was not and is not our intention to suggest that you be required to choose the option of retiring.  For that reason, the City is holding your LAGERS retirement paperwork until April 28, 2003 to allow you time to reconsider your options."  The city's holding of his retirement request, grant of leave without pay, and willingness to discuss other options demonstrate that it did

not create a work environment so intolerable that a reasonable employee would be compelled to quit.

Hopkins argues that the denial of the Leave Donation Program in November 2002 "set into motion the circumstances that culminated with his discharge." Because his paid leave ended November 21, 2002, the Program would have allowed him (at most) to remain an employee **until the end of May** 2003. It is undisputed that Hopkins could not perform his job by driving until **October 2003** (at the earliest). The denial of the Leave Donation Program did not, on the facts of this case, cause his discharge. The district court properly granted summary judgment on the constructive discharge claim.

## III.

The judgment of the district court is reversed in part, affirmed in part, and the case remanded.

_____